**COMMONWEALTH of Pennsylvania,
Appellant**

v.

**William PADILLAS, Appellee.**

Superior Court of Pennsylvania.

Argued Feb. 23, 2010.

Filed June 11, 2010.

Nichole L. Eisenhart, Assistant District Attorney, Lebanon, for Commonwealth, appellant.

Jay M. Nigrini, Reading, for appellee.

BEFORE: GANTMAN, ALLEN, and LAZARUS, JJ.

OPINION BY GANTMAN, J.:

¶ 1 Appellant, the Commonwealth of Pennsylvania, appeals from the order entered in the Lebanon County Court of Common Pleas, which granted Appellee, William Padillas, a new trial. We reverse and remand for re-sentencing.

¶ 2 The relevant factual and procedural history of this case is as follows. On August 1 and August 9, 2006, the Lebanon City police set up two controlled drug buys using a confidential informant ("CI"). The drug buys occurred at 372 North 12th Street, Lebanon City, Pennsylvania, where Appellee lived with his parents and brother, Daniel Padillas, among others. On November 13, 2006, the police arrested Appellee and charged him with two counts of delivery of a controlled substance arising out of both controlled buys.[1]

¶ 3 On June 4, 2008, the court held a jury trial. The CI testified he had gone to 372 North 12th Street and purchased cocaine from Appellee on August 1 and August 9, 2006. The CI stated he had known the Padillas family, including Appellee and his brother, Daniel, for approximately twenty (20) years, and had, at one point, lived with the family. Appellee's mother, father, and Daniel, testified on Appellee's behalf. Mr. and Mrs. Padillas testified Appellee did not use or sell drugs. They also testified Appellee left to drive to New York City before the CI arrived at the house on August 1, 2006. Appellee's mother testified she was in Florida on August 9th. Appellee's father testified he could not remember where he was on August 9th.

¶ 4 Daniel testified he was at home with some friends on August 1st. The CI came to the house, approached Daniel, and asked if Daniel could help him get some drugs. Daniel told the CI he would see what he could do. Daniel went upstairs. The CI remained downstairs talking with the friends, but soon followed Daniel up to his room.[2] In Daniel's room, the CI pulled

a bag of cocaine out of his mouth, and both Daniel and the CI did a line of cocaine. The CI put the remaining cocaine into a different bag and left. Daniel believed one of his friends had sold the drugs to the CI on August 1st, but said the CI had previously brought drugs to the house and often carried the drugs in his mouth. Daniel testified he had done drugs with the CI "quite often." (N.T. Trial, 6/4/08, at 83; R.R. at 106). Daniel stated the CI would come to the Padillas residence to see Daniel, and Appellee would avoid the CI when the CI was at the house. Daniel said his brother did not use or sell drugs. Daniel testified he could not remember where he was on August 9th, but there were usually a large number of people at the house.

¶ 5 Appellee testified he did not like the CI and tried to avoid the CI as much as possible. The CI would come over to the house to see Daniel. Appellee knew Daniel used cocaine and would do drugs with the CI. On August 1st, Appellee, his girlfriend, and his children left around 1:00 p.m. to drive to New York City. Appellee could not remember exactly where he was on August 9th, but he was probably at home. Appellee said he did not at any time sell drugs to the CI, use drugs, or deal drugs. On cross-examination, Appellee admitted he had pled guilty to possession of a small amount of marijuana with intent to deliver drug paraphernalia and had used marijuana. Appellee then explained he thought "drug" meant cocaine.

¶ 6 The jury convicted Appellee of one count of possession with intent to deliver ("PWID") cocaine in relation to the August 9th incident. On October 22, 2008, the court sentenced Appellee to one (1) to

---

1. 35 P.S. § 780-113(a)(30).

2. On direct examination, Daniel testified he and the CI went upstairs at the same time; however, on cross examination, Daniel testified he went upstairs, while the CI remained downstairs talking with Daniel's friends. Daniel later stated the CI purchased drugs from one of Daniel's friends, outside of Daniel's presence.

three (3) years to be served in county prison. That same day, Appellee filed a post-sentence motion seeking a judgment of acquittal, arrest of judgment, or a new trial based on the after-discovered evidence of his brother's post-verdict confession to the August 9th drug sale. The court set a hearing date on the motion. At the hearing, the court apprised Daniel of his constitutional right against self-incrimination and his right to counsel. Daniel decided to seek the assistance of counsel before testifying. The hearing was continued to January 13, 2009.

¶ 7 At the January 13, 2009 hearing, Daniel testified his friends sold the CI cocaine on August 1st, but he sold the CI cocaine on August 9th. Daniel stated he had not admitted his role before because he was "too scared" but decided to come clean as he did not want his brother to go to jail for something Daniel had done. (N.T. Post–Sentence Motion Hearing, 1/13/09, at 7; R.R. at 150). Daniel agreed the CI would not confuse Daniel and Appellee "unless he wanted to." (*Id.* at 10; R.R. at 153).

¶ 8 On April 8, 2009, the court denied Appellee's motion for judgment of acquittal and arrest of judgment, but granted Appellee a new trial. On April 27, 2009, the Commonwealth filed a notice of appeal. The court did not order the Commonwealth to file a concise statement of matters complained of on appeal pursuant to Rule 1925(b), and the Commonwealth filed none.

¶ 9 The Commonwealth raises one issue for our review:

WHETHER THE TRIAL COURT ERRED IN GRANTING [APPELLEE] A NEW TRIAL BASED UPON AFTER–DISCOVERED EVIDENCE?

(Commonwealth's Brief at 4).

¶ 10 "When we examine the decision of a trial court to grant a new trial on the basis of after-discovered evidence, we ask only if the court committed an abuse of discretion or an error of law which controlled the outcome of the case." *Commonwealth v. Bonaccurso,* 425 Pa.Super. 479, 625 A.2d 1197, 1199 (1993). "Discretion is abused when the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will." *Commonwealth v. Martinez,* 917 A.2d 856, 859 (Pa.Super.2007) (quoting *Commonwealth v. Widmer,* 560 Pa. 308, 322, 744 A.2d 745, 753 (2000)). "If a trial court erred in its application of the law, an appellate court will correct the error." *Commonwealth v. Hernandez,* 886 A.2d 231, 235 (Pa.Super.2005), *appeal denied,* 587 Pa. 720, 899 A.2d 1122 (2006) (citation omitted).

¶ 11 Initially, the Commonwealth argues the law does not recognize a "de facto" invocation of the constitutional right against self-incrimination. The Commonwealth asserts the Fifth Amendment could render Daniel's testimony unavailable only if he had explicitly invoked it, as the privilege applies to those who decline to respond to certain inquiries but does not extend to mere silence. The Commonwealth submits the court erred when it decided that Daniel must have intended to invoke the privilege at Appellee's trial, just because Daniel said nothing at the time of his alleged involvement in the offenses. The Commonwealth maintains Daniel's post-trial admission should have been deemed "available" at the time of Appellee's trial. The Commonwealth claims the court should have further evaluated whether Daniel's "presumed" claim of privilege was justified rather than simply assuming the Fifth Amendment would have protected Daniel's testimony.

¶ 12 The Commonwealth also argues Appellee failed to exercise due diligence in discovering this exculpatory evidence. The Commonwealth notes Appellee first told the police at the time of his arrest that his brother had sold the drugs and "it happened before"; yet Appellee failed to question Daniel or his family members about Daniel's possible involvement. The Commonwealth asserts Appellee had a duty to develop Daniel's role in the drug sales if Appellee believed his brother was involved in those sales. The Commonwealth maintains Appellee was not relieved of this duty when Daniel denied involvement in the drug sales. The Commonwealth contends Appellee's close relationship and regular contact with Daniel made it very likely Appellee could have discovered Daniel's inculpatory statement in the exercise of due diligence.

¶ 13 Moreover, the Commonwealth states Daniel's inculpatory statement is cumulative and offered solely to impeach the CI's trial testimony identifying Appellee as the perpetrator. Appellee challenged the CI's credibility at trial through the testimony of Appellee's mother, father, and brother, and this challenge failed. The Commonwealth contends Appellee now offers Daniel's confession to impeach the CI; by granting Appellee a new trial, the court improperly gave Appellee this chance. Lastly, the Commonwealth contends the circumstances surrounding Daniel's confession are so unreliable, it is unlikely the outcome of Appellee's trial would be different. The Commonwealth concludes this Court should vacate the new trial order, reinstate the jury's guilty verdict, and re-

mand for re-imposition of the sentence. We agree.

¶ 14 The Fifth Amendment protects a witness from compelled self-incrimination and renders that testimony unavailable. *United States v. Doe,* 465 U.S. 605, 610, 104 S.Ct. 1237, 1241, 79 L.Ed.2d 552, 558, 559 (1984).

[F]ar from being prohibited by the Constitution, admissions of guilt by wrongdoers, if not coerced, are inherently desirable. In addition to guaranteeing the right to remain silent unless immunity is granted, **the Fifth Amendment proscribes only self-incrimination obtained by a genuine compulsion of testimony.** Absent some officially coerced self-accusation, the Fifth Amendment privilege is not violated by even the most damning admissions. Accordingly, unless the record reveals some compulsion, . . . incriminating testimony cannot conflict with any constitutional guarantees of the privilege.

*United States v. Washington,* 431 U.S. 181, 187, 97 S.Ct. 1814, 1818–19, 52 L.Ed.2d 238, 244, 245 (1977) (internal citations and quotation marks omitted) (emphasis added). "The privilege against self-incrimination generally protects an individual from being compelled to incriminate himself in any manner." *Commonwealth v. Long,* 831 A.2d 737, 743 (Pa.Super.2003), *appeal denied,* 576 Pa. 721, 841 A.2d 530 (2003). "[I]n all instances other than the protection given by our Commonwealth's Constitution to reputation, the provision in Article I, § 9 against self-incrimination tracks its federal counterpart." *Commonwealth v. Morley,* 545 Pa. 420, 429, 681 A.2d 1254, 1258 (1996).[3]

---

**3.** The Court's reference to "reputation" means the privilege protects the witness against compelled self-incrimination in criminal conduct as well as protection from answering questions that would bring the witness social "disgrace or infamy." *See*

*Commonwealth v. Swinehart,* 541 Pa. 500, 512–13, 664 A.2d 957, 963 (1995). The present case involves no assertion that Pennsylvania provides more protection in this context than under federal law.

¶ 15 When a witness invokes his Fifth Amendment right against self-incrimination, the court must assess whether the witness' fear of self-incrimination is reasonable, and not of an "imaginary and unsubstantial character." *Ohio v. Reiner,* 532 U.S. 17, 21, 121 S.Ct. 1252, 1254, 149 L.Ed.2d 158, 162 (2001). In Pennsylvania, if the testimony of a witness **who previously invoked the Fifth Amendment** becomes available after the verdict, that testimony constitutes after-discovered evidence.[4] *Commonwealth v. Fiore,* 780 A.2d 704, 711–12 (Pa.Super.2001) (emphasis added). For that testimony to be considered previously "unavailable," however, the witness must have actually invoked his right to remain silent; if the witness simply refused to testify or the defendant did not question the witness about the incriminating topic, then the defendant cannot claim a witness' later self-incriminating statement is "after-discovered." *See Stanley v. Shannon,* 2007 WL 2345284, *4 n. 6 (E.D.Pa. Aug.16, 2007) (observing witness in *Fiore* was unavailable to testify at trial because he had invoked his Fifth Amendment right not to testify; therefore, witness' testimony in *Fiore* constituted after-discovered evidence; but testimony of witness who simply refuses or is unwilling to testify does not constitute after-discovered evidence).

¶ 16 To be granted a new trial based on the basis of after-discovered evidence:

[Defendant] must demonstrate that the evidence: (1) could not have been obtained prior to the conclusion of the trial by the exercise of reasonable diligence; (2) is not merely corroborative or cumulative; (3) will not be used solely to impeach the credibility of a witness; and (4) would likely result in a different verdict if a new trial were granted.

*Commonwealth v. Pagan,* 597 Pa. 69, 106, 950 A.2d 270, 292 (2008), *cert. denied,* —— U.S. ——, 129 S.Ct. 1378, 173 L.Ed.2d 633 (2009) (quoting *Commonwealth v. Randolph,* 582 Pa. 576, 587, 873 A.2d 1277, 1283 (2005), *cert. denied,* 547 U.S. 1058, 126 S.Ct. 1659, 164 L.Ed.2d 402 (2006)). The test is conjunctive; the defendant must show by a preponderance of the evidence that each of these factors has been met in order for a new trial to be warranted. *See Pagan, supra; Commonwealth v. Rivera,* 939 A.2d 355, 359 (Pa.Super.2007), *appeal denied,* 598 Pa. 774, 958 A.2d 1047 (2008).

¶ 17 To obtain a new trial based on after-discovered evidence, the petitioner must explain why he could not have produced the evidence in question at or before trial by the exercise of reasonable diligence. *Commonwealth v. Jones,* 266 Pa.Super. 37, 402 A.2d 1065, 1066 (1979). A defendant may unearth information that the party with the burden of proof is not required to uncover, so long as such diligence in investigation does not

---

4. The federal courts distinguish between evidence which was previously unavailable and evidence previously undiscovered, for the purposes of Federal Rule of Criminal Procedure 33 (governing motions for a new trial based on newly-discovered evidence). A majority of federal circuits have concluded evidence known but unavailable at trial, including evidence unavailable due to a witness' invocation of the Fifth Amendment, does not constitute "newly discovered evidence" within the meaning of Rule 33. *United States v. Owen,* 500 F.3d 83, 89–90 (2d Cir.2007); *United States v. Jasin,* 280 F.3d 355, 364 (3d Cir. 2002); *United States v. Metz,* 652 F.2d 478, 479–80 (5th Cir.1981); *United States v. Glover,* 21 F.3d 133, 138 (6th Cir.1994); *United States v. Theodosopoulos,* 48 F.3d 1438, 1448 (7th Cir.1995); *United States v. Gustafson,* 728 F.2d 1078, 1084 (8th Cir.1984); *United States v. Reyes–Alvarado,* 963 F.2d 1184, 1188 (9th Cir.1992); *United States v. DiBernardo,* 880 F.2d 1216, 1224 (11th Cir.1989).

exceed what is reasonably expected. *Commonwealth v. Brosnick*, 530 Pa. 158, 166, 607 A.2d 725, 729 (1992). *See also Argyrou v. State*, 349 Md. 587, 709 A.2d 1194, 1202–03 (1998) (holding due diligence requires that defendant act "reasonably and in good faith to obtain the evidence, in light of the totality of the circumstances and facts known to [him]"). Thus, a defendant has a duty to bring forth any relevant evidence in his behalf. *Commonwealth v. Johnson*, 228 Pa.Super. 364, 323 A.2d 295, 296 (1974). A defendant cannot claim he has discovered new evidence simply because he had not been expressly told of that evidence. *Commonwealth v. Crawford*, 285 Pa.Super. 169, 427 A.2d 166, 175 (1981). Likewise, a defendant who fails to question or investigate an obvious, available source of information, cannot later claim evidence from that source constitutes newly discovered evidence. *Commonwealth v. Chambers*, 528 Pa. 558, 583, 599 A.2d 630, 642 (1991), *cert. denied*, 504 U.S. 946, 112 S.Ct. 2290, 119 L.Ed.2d 214 (1992). The concept of reasonable diligence is particularly relevant where the defendant fails to investigate or question a potential witness with whom he has a close, amicable relationship. *See Commonwealth v. Parker*, 494 Pa. 196, 200, 431 A.2d 216, 218 (1981) (holding defendant did not exercise reasonable diligence where he failed to learn before or during trial of girlfriend's confession to murder for which he was on trial). *See also United States v. Vigil*, 506 F.Supp.2d 571, 578 (D.N.M.2007) (observing defendant likely knew content of new witness' testimony where defendant had long-standing personal relationship with witness, worked with witness, and witness was member of defendant's family); *Commonwealth v. Weichell*, 446 Mass. 785, 847 N.E.2d 1080, 1092 (2006) (stating defendant who learned of exculpatory witness testimony after trial did not exercise due diligence, where he maintained contact with witness and circumstances should have alerted him to existence of evidence claimed to be newly discovered). Absent a plausible explanation for the failure to discover the evidence earlier, evidence obtained after trial should not be deemed "after-discovered"; to allow the defendant to claim information actually or constructively within his knowledge and available to him is after-discovered. *Crawford, supra* (stating to invalidate conviction because defendant was not expressly told facts he already believed to exist would be tantamount to allowing evidence within the knowledge of defendant and available to him at trial can still be considered "after-discovered"). *See also United States v. Sims*, 72 Fed.Appx. 249, 252, 2003 WL 21500184, *2 (6th Cir., 2003) (reiterating that under federal law, "where a witness who has indicated to the defendant either an unwillingness to testify truthfully at trial, or has indicated an intention to assert the Fifth Amendment privilege against self-incrimination at trial, but later supplies an affidavit exonerating the defendant of the offense, the affidavit is merely newly **available** evidence, but it is not newly **discovered** evidence"; rejecting post-trial affidavit exonerating defendant as newly discovered evidence, reasoning defendant "should not be allowed to sandbag the fairness of the trial by withholding or failing to seek out material, probative evidence and then collaterally attacking his conviction").

¶ 18 Before a court grants a new trial on the basis of after-discovered evidence, the defendant must also show the alleged after-discovered evidence is not just corroborative or cumulative of the evidence already presented at trial. *See Pagan, supra.* Whether new evidence is corroborative or cumulative in this context depends on the strength of the other evidence supporting the conviction. *Com-*

monwealth v. McCracken, 540 Pa. 541, 549–50, 659 A.2d 541, 545 (1995). New evidence to support a defendant's claim of innocence is less likely to be deemed cumulative if the conviction is based largely on circumstantial evidence. Id. See also State v. Cline, 275 Mont. 46, 53, 909 P.2d 1171, 1176 (1996) (holding post-verdict discovery of third-party confession to crime was not cumulative, where defendant's conviction rested almost entirely on circumstantial evidence). Where the new evidence, however, supports claims the defendant previously made and litigated at trial, it is probably cumulative or corroborative of the evidence already presented. See Rivera, supra; Commonwealth v. Nocero, 399 Pa.Super. 346, 582 A.2d 376, 381 (1990), appeal denied, 527 Pa. 643, 593 A.2d 416 (1991).

¶ 19 Further, a defendant seeking a new trial must demonstrate he will not use the alleged after-discovered evidence solely to impeach the credibility of a witness. See Pagan, supra. "Whenever a party offers a witness to provide evidence that contradicts other evidence previously given by another witness, it constitutes impeachment...." Commonwealth v. Weis, 416 Pa.Super. 623, 611 A.2d 1218, 1229 (1992). Where eyewitness identification tied the defendant to the crime charged and the defendant challenged the identification in his trial, third-party testimony exculpating the defendant impeaches the eyewitness. Commonwealth v. Moore, 534 Pa. 527, 561, 633 A.2d 1119, 1136 (1993), cert. denied, 513 U.S. 1114, 115 S.Ct. 908, 130 L.Ed.2d 790 (1995) (rejecting witness' statement against penal interest as reliable after-discovered evidence, where sole purpose of statement was to impeach testimony connecting defendant to crime).

¶ 20 Finally, before granting a new trial, a court must assess whether the alleged after-discovered evidence is of such nature and character that it would likely compel a different verdict if a new trial is granted. See Pagan, supra; Moore, supra. In making that determination, a court should consider the integrity of the alleged after-discovered evidence, the motive of those offering the evidence, and the overall strength of the evidence supporting the conviction. Parker, supra (stating conflicting accounts are inherently unreliable and would not compel different verdict in new trial). See also Commonwealth v. Washington, 592 Pa. 698, 717, 927 A.2d 586, 597 (2007) (stating exculpatory accomplice testimony should be viewed with suspicion where accomplice has already been tried and has nothing to lose); Argyrou, supra at 1204 (noting "cases that have addressed [newly-discovered evidence] have focused not simply on the credibility of the person offering the exculpatory evidence, but on the credibility or trustworthiness of the evidence itself, as well as the motive, or other impeaching characteristics, of those offering it"); Hopkins v. Commonwealth, 20 Va.App. 242, 456 S.E.2d 147, 151 (1995) (holding after discovered evidence was insufficient to support the grant of a new trial where verdict was "based on uncontradicted, corroborated, and reaffirmed eyewitness testimony" and evidence is "self-contradictory, perjured at least in part, and plainly untrustworthy of belief"); State ex rel. Smith v. McBride, 224 W.Va. 196, 681 S.E.2d 81, 95–96 (2009) (noting due to strength of evidence against defendant, third party's confession was unlikely to change verdict).

¶ 21 A statement against penal interest is often considered trustworthy if it subjects the declarant to criminal liability and a reasonable person would not make the claim unless it was true. Randolph, supra at 587–88, 873 A.2d at 1284 (discussing Pa.R.Evid. 804(b)). Before

crediting as reliable a statement against penal interest, the court must consider the declarant's motive for making the statement and whether the surrounding circumstances indicate the statement is trustworthy. *Id.* For example, a defendant's relative or close friend's confession should be closely scrutinized for motive to fabricate the confession. *See Parker, supra* (affirming trial court's rejection of confession of defendant's girlfriend as unreliable, where girlfriend made confession during jury deliberations later repudiated her confession). *See also State v. Cureaux,* 736 So.2d 318, 322–23 (La.App.4th Cir.1999) (stating nephew's motive for confessing to uncle's crimes was suspect, due to familial relationship); *Weichell, supra* at 1094 (noting third party's close relationship to defendant demonstrated "obvious motive" to fabricate confession); *State v. Haner,* 182 Vt. 7, 928 A.2d 518, 523, 524–25 (2007) (stating: "[T]he familial relationship between defendant and his brother calls into question the veracity of any exculpatory statement by defendant's brother"); *King v. State,* 780 P.2d 943, 950 (Wyo.1989) (observing "motive of the declarant to falsify for the benefit of the accused should also be considered" when analyzing admissibility of statement against penal interest). Recantation testimony "is one of the least reliable forms of proof, particularly when it constitutes an admission of perjury." *McCracken, supra* at 548, 659 A.2d at 545 (holding witness' recantation of trial identification testimony met four-prong test for after-discovered evidence to warrant new trial, where witness had, consistently and resolutely throughout pre-trial proceedings and trial, identified defendant as perpetrator of robbery; where witness was sole Commonwealth witness to identify defendant; where identifying witness "has recanted his testimony, such evidence can not be considered cumulative or corroborative

because the defendant claimed that he did not commit the crime in question. This was the essence of [the] defense and the ultimate question [at] trial. Thus, [witness'] recantation is neither cumulative, corroborative, nor for impeachment purposes. ... [T]he limited evidence connecting [defendant] to the crime makes [witness'] recantation of such nature and character that a different verdict will likely result at a retrial").

¶ 22 In the instant case, the court found Daniel had *"de facto"* invoked his Fifth Amendment right to remain silent when testifying at Appellee's trial, because Daniel **could have invoked** the Fifth Amendment **if asked** about his role in the drug sales. Therefore, the court concluded Daniel's belated confession constituted "unavailable" evidence at Appellee's trial. The court found Daniel's confession was not cumulative or corroborative of the trial evidence because Daniel's confession fully exculpated Appellee. The court found Daniel's confession reliable because it was a statement against Daniel's penal interest. The court summarily concluded Daniel's statement was not solely to impeach the CI's identification testimony and would likely change the verdict if the jury believed it. Respectfully, we disagree with the court's analysis.

¶ 23 Here, Daniel voluntarily testified at Appellee's trial on Appellee's behalf. Appellee questioned Daniel about the events of August 1st, but asked Daniel no questions about the August 9th incident. Daniel stated he did not remember what happened on August 9th. At no point was Daniel asked about **his** possible involvement in the drug sales. The court erred as a matter of law when it simply inferred the unavailability of Daniel's confession, given the absence of questions about potentially incriminating topics, simply because Daniel **could** have invoked his

rights **if** asked incriminating questions. *See Washington, supra.* Thus, Daniel was not subjected to compelled self-incrimination at Appellee's trial and had no need to invoke his constitutional rights. *See Doe, supra.* Therefore, we conclude Daniel's testimony was "available" for purposes of Appellee's trial. *See Washington, supra; Morley, supra.*

¶ 24 Moreover, Daniel's confession fails the due diligence prong of the four-part test for after-discovered evidence. Appellee lived in the same home with Daniel throughout the relevant period. Appellee was aware his brother used cocaine, was friends with the CI, and did drugs with the CI. When the police arrested Appellee, Appellee even said they "probably had him confused with [Daniel], it happened before." (*See* N.T. Post–Sentence Motion Hearing, at 13; R.R. at 156.) Based on these circumstances, Appellee knew or should have known, at or before trial, of Daniel's possible involvement in the August 9th drug sale. Nonetheless, Appellee did not ask Daniel or any of his family members about Daniel's connection to the drug sales or otherwise investigate that prospect. Further, Daniel voluntarily testified for Appellee at trial. Appellee did not ask Daniel about his role, if any, in the drug sales at issue. Appellee did not investigate an obvious, easily accessible source of information and provided no plausible explanation for this failure. The fact that Daniel had earlier said he "could not remember where he was on August 9th" does not relieve Appellee of his duty to investigate with reasonable diligence the exculpatory information Daniel waited until after trial to offer. In light of these circumstances, we conclude Appellee failed to act with reasonable diligence in discovering Daniel's allegedly exculpatory evidence. *See Chambers, supra; Parker, supra; Jones, supra; Johnson, supra.*

¶ 25 Additionally, the nature and substance of Daniel's confession is both corroborative and cumulative of the evidence presented at Appellee's trial where the essence of his defense was that he did not commit the crimes in question. Further, the Commonwealth's case against Appellee relied on the testimony of the CI. The CI had known Appellee and Daniel for approximately twenty years, and, as Daniel testified, could tell the brothers apart. The CI consistently and positively identified Appellee as the seller of the drugs on August 9th. At trial, Appellee attempted to impeach the CI's testimony by showing bias arising out of the CI's affair with Appellee's mother fifteen years ago and the purportedly hostile relationship between the CI and Appellee thereafter. Appellee's mother, father, and Daniel all testified that Appellee did not use or sell drugs and did not associate with the CI. Daniel's post-verdict confession is therefore cumulative and corroborative of the trial testimony exonerating Appellee. *See Rivera, supra; Nocero, supra.* As the CI testified for the Commonwealth at Appellee's trial and unequivocally identified Appellee as the perpetrator, Daniel's later confession directly contradicts the CI's trial statements. Thus, the confession impeaches the CI. *See Weis, supra; Moore, supra.* Therefore, Daniel's confession is cumulative, corroborative, and offered solely for impeachment purposes. *See Pagan, supra.*

¶ 26 Finally, Daniel confessed only to the drug sale for which the jury had convicted his brother. There is no evidence corroborating Daniel's claimed role in the August 9th drug sale. Also, the close sibling relationship between Daniel and Appellee gave Daniel strong reason to fabricate a confession clearing his brother. *See Randolph, supra; Parker, supra.* The trial court found Daniel's confession

reliable solely because it was a statement against Daniel's penal interest, without testing Daniel's motive or considering whether the circumstances surrounding the confession indicated it was trustworthy. *See Parker, supra.* Daniel's close relationship with Appellee gave Daniel an obvious motive to fabricate his confession. *See Weichell, supra.* Further, Daniel's confession is a complete recantation of his testimony at Appellee's trial, and the court should have viewed it as suspect even if the confession subjected Daniel to prosecution.[5] *See McCracken, supra.* Given our review of the entire record and the dubious circumstances surrounding Daniel's confession, we cannot say that a new jury presented with all the evidence including Daniel's confession would likely reach a different verdict upon retrial.

¶ 27 Based upon the foregoing, we conclude the court erred in granting Appellee a new trial due to the alleged after-discovered evidence of Daniel's confession. *See Pagan, supra.* Accordingly, we reverse the order granting Appellee a new trial, and remand the case for reinstatement of the jury verdict and re-sentencing.

¶ 28 Order reversed; case remanded for re-sentencing. Jurisdiction is relinquished.

**5.** If Daniel were later tried on charges arising from the August 9th drug sale, he could use the CI's earlier identification of Appellee as a cause for reasonable doubt.