J-S32040-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| RICKIE JAMES | : | |
| | : | |
| Appellant | : | No. 776 EDA 2019 |

Appeal from the PCRA Order Entered March 4, 2019,
in the Court of Common Pleas of Philadelphia County,
Criminal Division at No(s):  CP-51-CR-0013643-2009.

BEFORE:   KUNSELMAN, J., KING, J., and COLINS, J.[*]

MEMORANDUM BY KUNSELMAN, J.:                **FILED AUGUST 28, 2020**

Rickie James appeals from the order denying his petition filed pursuant

to the Post Conviction Relief Act.  42 Pa.C.S.A. §§ 9541-9546.  We affirm.

The PCRA court summarized the pertinent facts from James' trial as

follows:

> On September 30, 2009, at about 6:27 p.m., Police Officer
> Andrew Jackson was in an unmarked police vehicle in the
> vicinity of 22nd and Dauphin Streets when he was flagged
> down by the [victim].  Officer Jackson testified [the victim]
> exited his Chevrolet Impala screaming and pointing towards
> his left shoulder; he told Officer Jackson that he had been
> shot.  Officer Jackson saw the bullet wound and a bit of
> blood right below [the victim's] left ear.  Officer Jackson
> observed that the driver's side window of the vehicle was
> shot out and there were multiple shots visible on the driver's
> side of the vehicle.  [The victim] told Officer Jackson that he
> was shot by someone named Rickie, who lived in the area
> of 23rd and Norris Streets in a house in front of which a black

---

[*] Retired Senior Judge assigned to the Superior Court.

Chrysler Pacifica was parked. [The victim] described two shooters: the first male was Rickie, a black male about 6'2'' wearing a black hoodie and riding a bike. The second male was described as a black male wearing a black hoodie and riding a bike. [The victim's] children were in the car and after they were picked up, [he] was taken to Temple University Hospital by Police Officer Robert Dougherty.

\*\*\*

[The victim] testified that on September 30, 2009, we was picking up medicine for the mother of his eight-year old son at a Rite Aid Pharmacy located at 22nd Street and Lehigh Avenue. His son, seven-year old daughter and eight-year old niece were with him in the car. After going to the playground at 25th and Diamond Streets, they drove to his son's mother's house at 22nd and Diamond Streets. As he pulled up, he saw two people who started to shoot at him. He testified that he could not identify either shooter, that he was just grazed by the shots, and that his window was hit. [The victim] drove to Dauphin Street and flagged down a police officer . . . whom he saw in an unmarked vehicle. He did not recall telling the officer who had shot him. [The victim] was released from the hospital and was taken to Northwest Detectives where he gave a statement to Detective Edward Keppol. [The victim] testified that when he was interviewed he was under the influence of the drugs he had received at the hospital.

He further testified that he did not recognize anyone in the courtroom as the person who shot at him, but in his statement to police, he stated that two people came towards his vehicle shooting. . . . [The victim] denied telling police the information contained in his statement; he testified that he told the police some of the information in his statement, but that most of it was false. He stated that the detective told him whose photos to identify and that he really was not sure who had shot him, but he was sure it was neither defendant.

The notes of testimony from the preliminary hearing for [James] and the notes of testimony from co-defendant [Lamar] Harding's preliminary hearing were read to the jury. [The victim] testified that the notes were inaccurate and that he did not testify as the notes reflected. He then

stated he identified [James] as one of the shooters at the preliminary hearing because he "was pissed off" about an earlier confrontation with a woman who was in the Rite Aid parking lot with [James]. [The victim] identified [Harding] and [James] as the shooters numerous times at each of their preliminary hearings, but denied at trial knowing who had shot at him. He insisted that it was neither defendant and insisted that the court reporter transcribed an inaccurate report.

Police Officer Robert Dougherty testified that he met Officer Jackson in the vicinity of 22nd and Dauphin and transported [the victim] to the hospital. On the way to the hospital, [the victim] told him that he was possibly shot over an earlier confrontation over a parking spot at Rite Aid.

\*\*\*

After he was released from the hospital, [the victim] was formally interviewed. Detective [Edward] Keppol [testified] that [the victim] did not appear drowsy or under the influence of any drugs . . . Detective Keppol read [the victim's] statement to the jury and denied telling [him] that the police had a suspect. Detective Keppol showed [the victim] a photograph of [James] after [the victim] said that [James] had shot him.

PCRA Court Opinion, 6/28/19, at 2-3 (citation omitted).

James and Harding were tried together. Based on the above evidence, on May 13, 2010, a jury convicted James of attempted murder and related charges. On July 7, 2010, the trial court sentenced James to an aggregate term of seventeen to thirty-four years of imprisonment on his remaining convictions. James filed a timely petition for reconsideration.

On October 13, 2010, the trial court held a hearing on the motion, at which James' mother testified regarding a letter purportedly written by Harding. She testified that Harding allegedly "stated in the letter that he is

the actual person that shot [the victim] and not [James]." N.T., 10/13/10, at 5. The Commonwealth argued that nothing in the letter was relevant to the post-sentence motion, but the letter could be the basis for a "PCRA after discovered evidence" claim. N.T., 10/13/10, at 8. In addition, the prosecutor commented that he read the letter and "nothing indicated [James] is innocent, it just indicates [Harding] is guilty of more crimes than he was found guilty of." **Id.**[1] For his part, James' trial counsel stated he agreed that the letter allegedly written by Harding would be appropriately considered under the PCRA. **Id.** at 9. Finally, the prosecutor stated that "with regards to the authentication of this letter, it could have [been] written by [James.]" **Id.** Trial counsel then confirmed that he received an original copy of the letter from James' mother. **Id.** Although the letter was marked as a defense exhibit, it was not admitted into evidence. Ultimately, the trial court denied James' post-sentence motion.

Trial counsel filed a timely appeal on James' behalf but later was permitted to withdraw, and the trial court appointed new counsel. In an unpublished memorandum filed on October 18, 2011, this Court rejected James' challenge to the sufficiency of the evidence supporting his convictions, as well as his claim challenging the discretionary aspects of his sentence.

---

[1] The jury convicted Harding of only aggravated assault, and the trial court sentenced him to an aggregate term of three-and-one-half to ten years in prison and a consecutive five-year probationary term. **See Commonwealth v. Harding**, 37 A.3d 1235 (Pa. Super. 2011)(unpublished memorandum).

*Commonwealth v. James*, 37 A.3d 1235 (Pa. Super. 2011). Although James claimed that he was entitled to a new trial based upon after-discovered evidence in the form of Harding's letter, we found this claim waived because the letter did not appear in the certified record. *James*, unpublished memorandum at 15-16. In a footnote, however, we noted that "our review of the document attached to [James'] brief reveals that nowhere therein does [Harding] state he was solely responsible for shooting [the victim]." *Id.* at 16 n.7. Our Supreme Court denied James' petition for allowance of appeal on February 1, 2012. *Commonwealth v. James*, 37 A.3d 1194 (Pa. 2012).

On March 28, 2013, James filed a *pro se* PCRA petition, and the PCRA court appointed counsel. Thereafter, PCRA counsel filed a petition to withdraw and a "no-merit" letter pursuant to *Commonwealth v. Turner*, 544 A.2d 927 (Pa. 1988), and *Commonwealth v. Finley*, 550 A.2d 213 (Pa. Super. 1988) (*en banc*). According to PCRA counsel, James' PCRA petition was untimely and alleged not time-bar exception. The PCRA court agreed and, following a Pa.R.Crim.P. 907 notice, the PCRA court dismissed the petition as untimely.

James filed a timely appeal to this Court in which he asserted that his PCRA petition was timely. After reviewing the record, we determined that the PCRA court erred in concluding James had not filed a petition for permission to appeal to our Supreme Court. *See Commonwealth v. James*, 190 A.3d 721 (Pa. Super. 2018) (unpublished memorandum). This Court therefore reversed the PCRA court's order denying relief and remanded for the appointment of new counsel. *Id.*

Following remand, the PCRA court appointed current counsel, who filed an amended petition in which he claimed he was entitled to a new trial based upon after-discovered evidence, as well as a layered claim of ineffectiveness due to prior counsel's failure to ensure Harding's letter appeared in the certified record. On February 4, 2019, the Commonwealth filed a motion to dismiss the amended petition. The next day, the PCRA court issued a Pa.R.Crim.P. 907 notice of its intent to dismiss the petition without merit. James filed a response. By order entered March 4, 2019, the PCRA court dismissed James' amended PCRA petition. This timely appeal followed. Although the PCRA court did not require James to comply with Pa.R.A.P. 1925, the PCRA court filed a Rule 1925(a) opinion.

James raises the following issue on appeal:

> Did the [PCRA court] err in refusing to grant [James] an evidentiary hearing regarding the question of whether [he] was involved with the shooting of the victim, involving the testimony of [Harding] and the letter he sent to [James'] family at the end of trial?

James' Brief at 1.

This Court's standard of review regarding an order dismissing a petition under the PCRA is to ascertain whether "the determination of the PCRA court is supported by the evidence of record and is free of legal error. The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record." **Commonwealth v. Barndt**, 74 A.3d 185, 191-92 (Pa. Super. 2013) (citations omitted).

- 6 -

> The PCRA court has discretion to dismiss a petition without a hearing when the court is satisfied that there are no genuine issues concerning any material fact, the defendant is not entitled to post-conviction collateral relief, and no legitimate purpose would be served by further proceedings. To obtain a reversal of a PCRA court's decision to dismiss a petition without a hearing, an appellant must show that he raised a genuine issue of material fact which, if resolved in his favor, would have entitled him to relief, or that the court otherwise abused its discretion in denying a hearing.

*Commonwealth v. Blakeney*, 108 A.3d 739, 750 (Pa. 2014) (citations omitted).

In his issue, James argues that the PCRA court abused its discretion in dismissing his PCRA without first affording him a hearing based on the content of Harding's letter. James summarizes his argument in support of his issue as follows:

> There is enough of an evidentiary cause for [the PCRA court] to have granted [James] an evidentiary hearing, primarily based upon the testimony of eyewitness and co-defendant, [Harding] who has communicated by means of a letter to [James'] family that he has knowledge of the fact that [James] was not the shooter of [the victim] of this incident. Therefore, the [PCRA] court needs to conduct an evidentiary hearing so that [Harding's] testimony can be certified and included with the record to be considered by this Honorable Court so that it can equitably determine whether this case can be remanded back to the [PCRA] court for a new trial or a new sentencing.

James' Brief at 6.

To address this claim, we first note the test applied to after-discovered evidence under the PCRA. When discussing the test in the context of a PCRA appeal, our Supreme Court summarized:

- 7 -

> [W]e have viewed this analysis in criminal cases as comprising four distinct requirements, each of which, if unproven by the petitioner, is fatal to the request for a new trial. As stated, the four-part test requires the petitioner to demonstrate the new evidence: (1) could not have been obtained prior to the conclusion of trial by the exercise of reasonable diligence; (2) is not merely corroborative or cumulative; (3) will not be used solely to impeach the credibility of a witness; and (4) would likely result in a different verdict if a new trial were granted. The test applies with full force to claims arising under Section 9543(a)(2)(vi) of the PCRA. In addition, we have held the proposed new evidence must be producible and admissible.

*Commonwealth v. Small*, 189 A.3d 961, 972 (Pa. 2018) (citations omitted).

Credibility determinations are an integral part of determining whether a PCRA petitioner has presented after-discovered evidence that would entitle him to a new trial. *See*, *e.g.*, *Small*, 189 A.3d at 978-79 (remanding for the PCRA court to make relevant credibility determinations). We have stated, prior to granting a new trial based on after-discovered evidence, "a court must assess whether the alleged after-discovered evidence is of such a nature and character that it would likely compel a different verdict if a new trial is granted." *Commonwealth v. Padillas*, 997 A.2d 356, 365 (Pa. Super. 2010). "In making this determination, a court should consider the integrity of the alleged after-discovered evidence, the motive of those offering the evidence, and the overall strength of the evidence supporting the conviction." *Id.*

Here, the PCRA court explained that it denied James' amended PCRA petition without a hearing for several reasons:

First, [James] fails to proffer a signed certification from Harding indicating that he did, in fact, write the letter or that he would testify at an evidentiary hearing. Without such a certification, the claim must fail.

Moreover, [James'] claim fails because Harding's letter does not contain, as [James] alleges, the assertion that [James] was not the person [who] shot the victim[.] In the letter, Harding is addressing a person by the name of "Rakim." The contents of the letter are largely Harding accusing Rakim's mother of telling people that Harding had snitched on [James]. In the letter, Harding insists that he never "ratted" on [James] and further threatens to kill Rakim and his mother when Harding gets out of jail. At one point in the letter, Harding acknowledges that he shot an unnamed "boy", but nothing in the letter established that Harding is referring to [the victim].

Simply, nothing in Harding's letter exculpates [James]. At no point does Harding's letter state that [James] did not shoot [the victim]. The evidence presented at trial established that both [James] and Harding shot at [the victim]. Therefore, even if Harding was referring to the shooting of [the victim], admitting that he shot the victim does not contradict the evidence presented at trial.

PCRA Court Opinion, 6/28/19, at 7 (citations omitted). In addition, the PCRA court noted this Court's statement on direct appeal, **see supra**, that nowhere in the letter does Harding state that he was solely responsible for shooting the victim. **Id.**

Our review of the record supports the PCRA court's conclusions. Initially, we note that James' claim fails because Harding did not sign a witness certification in which he acknowledges he authored the letter in question and was willing to testify at a PCRA hearing. **See** 42 Pa.C.S.A. 9545(d)(1)(i) (providing, "Where a petitioner requests an evidentiary hearing, the petition shall include a certification signed by each intended witness stating the

witness's name . . . and substance of testimony and shall include any documents material to that witness's testimony"); ***see also*** Pa.R.Crim.P. 902(A)(15)(providing that a request for an evidentiary hearing shall include witness certifications). Indeed, nowhere in this amended petition does James even aver that Harding was willing to testify regarding the contents of the letter.

In addition, to the extent we can read the handwritten letter, we agree with the PCRA court that, even if properly authenticated, the letter in no way exculpates James. This is especially true given, the "overall strength of the evidence supporting [James'] conviction." ***Padillas***, ***supra***. Although he recanted the identification at trial, in his initial statements to police, and in preliminary hearing testimony, the victim identified James—a person he knew—as one of the shooters. In addition, ballistic evidence established that a bullet fragment recovered from the victim's car was fired from the same handgun police found on James when they arrested him less than two weeks after the shooting. ***See*** N.T., 5/12/10, at 110-17.

In sum, because the PCRA court did not err in concluding that the letter allegedly written by Harding was not of such a nature and character that it would compel a different result, ***Small***, ***supra***, James' issue fails, and we affirm the PCRA court's order denying him post-conviction relief.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/28/20