J-S04038-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JORGE ALDEA | : | |
| | : | |
| Appellant | : | No. 909 EDA 2025 |

Appeal from the PCRA Order Entered February 27, 2025
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0004660-2012

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JORGE ALDEA | : | |
| | : | |
| Appellant | : | No. 911 EDA 2025 |

Appeal from the PCRA Order Entered February 27, 2025
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0004700-2012

BEFORE: LAZARUS, P.J., STABILE, J., and NEUMAN, J.

MEMORANDUM BY NEUMAN, J.: **FILED FEBRUARY 10, 2026**

Appellant, Jorge Aldea, appeals *pro se* from the post-conviction court's February 27, 2025 order entered in his two cases, consolidated below, that dismissed, as untimely, his petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546. After careful review, we affirm on the merits.

This Court previously summarized the facts of Appellant's cases, as follows:

> On November 25, 2011, Louis Chevere was shot and killed on West Westmoreland Street in Philadelphia. Two eyewitnesses identified Appellant as the shooter from a photo array.
>
> Appellant admitted to his girlfriend, Eliana Vasquez, that he had killed Chevere, and instructed her to go to police to provide them with misinformation as to who had committed the murder, and to find out who the potential witnesses were. Vazquez obtained several names of potential witnesses, including one Rosemary Fernandez-Rivera. Vazquez, Appellant, and Appellant's cousin, Raymond Soto, had several conversations concerning the elimination of potential eyewitnesses. Soto obtained a handgun, and he and Appellant recruited Shawn Poindexter to kill Fernandez-Rivera and make it look like a robbery.
>
> On January 23, 2012, Poindexter shot and killed Fernandez-Rivera while she was at work in a store on North Mutter Street in Philadelphia. Police determined from casings at the scene that the murder weapon had been a nine-millimeter handgun.

***Commonwealth v. Aldea***, No. 1443 EDA 2015, unpublished memorandum at 1-2 (Pa. Super. filed Mar. 4, 2016).

Procedurally, the PCRA court explained that,

> [o]n February 3, 2012, … [Appellant], was arrested and charged with murder and related offenses. On April 13, 2015, [Appellant] appeared before this court and entered into negotiated guilty pleas to first-degree murder and firearms not to be carried without a license ("VUFA 6106") in CP-51-CR-0004660-2012 and to first-degree murder, conspiracy to commit murder, and VUFA 6106 in CP-51-CR-0004700-2012.[1] The Commonwealth agreed to withdraw its request for the death penalty in exchange for [Appellant's] guilty plea.

_____

[1] The case docketed at CP-51-CR-0004660-2012 pertained to victim Chevere, and the case docketed at CP-51-CR-0004700-2012 pertained to victim Fernandez-Rivera.

- 2 -

On that same date, in CP-51-CR-0004660-2012, this court imposed the negotiated sentence of life imprisonment without the possibility of parole for first-degree murder and a concurrent term of one to two years of imprisonment for VUFA 6106. In CP-51-CR-0004700-2012, this court imposed the consecutive negotiated sentence of life imprisonment without the possibility of parole for first-degree murder and concurrent terms of ten to twenty years of imprisonment for conspiracy to commit murder and one to two years of imprisonment for VUFA 6106, for a total sentence of two consecutive terms of life imprisonment without the possibility of parole. [Appellant] did not file a post-sentence motion.

[Appellant] appealed and[,] on March 4, 2016, the Superior Court affirmed his judgment of sentence. [*See Commonwealth v. Aldea*, 144 A.3d 189 (Pa. Super. 2016) (unpublished memorandum).] [Appellant] did not file a petition for allowance of appeal with the Supreme Court of Pennsylvania.

On February 28, 2017, [Appellant] filed a timely[,] *pro se* … []PCRA[] petition, his first. On July 20, 2017, appointed PCRA counsel filed a no-merit letter pursuant to *Commonwealth v. Finley*, 550 A.2d 213 (Pa. Super. 1988)[,] and on that same date, this court filed a notice of intent to dismiss [his petition without a hearing] pursuant to Pa.R.Crim.P. 907. On August 24, 2017, this court dismissed the petition. On February 28, 2019, the Superior Court affirmed this court's dismissal and on January 8, 2020, the Supreme Court of Pennsylvania denied his petition for allowance of appeal. [*See Commonwealth v. Aldea*, 209 A.3d 1101 (Pa. Super. 2019) (unpublished memorandum), *appeal denied*, 223 A.3d 241 (Pa. 2020).]

On March 3, 2020, [Appellant] filed a second[,] *pro se* PCRA petition. This court dismissed the petition on June 18, 2020. After filing a notice of appeal, [Appellant] failed to comply with Pa.R.A.P. 3517, so the appeal was dismissed.

On January 30, 2023, [Appellant] filed a third[,] *pro se* PCRA petition. On April 13, 2023, this court dismissed the petition. [Appellant] appealed and the Superior Court affirmed this court's dismissal on June 20, 2024. [*See Commonwealth v. Aldea*, 323 A.3d 218 (Pa. Super. 2024) (unpublished memorandum). Appellant did not file a petition for allowance of appeal with our Supreme Court.]

On December 30, 2024, [Appellant] filed the instant[,] *pro se* PCRA petition. On January 30, 2025, this court filed a notice of

intent to dismiss [his petition without a hearing] pursuant to [Rule] 907. [Appellant] filed a Response to this court's [Rule] 907 notice on February 18, 2025.

PCRA Court Order and Opinion (PCOO), 2/27/25, at 1-2 (unnecessary capitalization omitted).

On February 27, 2025, the PCRA court issued an order and opinion dismissing Appellant's petition on the basis it was untimely filed and met no timeliness exception. *See id.* at 5. Alternatively, the court concluded Appellant would not be entitled to relief on the merits of his petition, even had he satisfied a timeliness exception. *See id.* at 6-7.

Appellant filed a timely, *pro se* notice of appeal.[2] It does not appear from the record that the PCRA court ordered Appellant to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal, and the court filed its February 27, 2025 opinion in satisfaction of Rule 1925(a). Herein, Appellant states four issues for our review:

> 1. Whether the PCRA court erred when it dismissed Appellant's PCRA petition a month after it was filed, before Appellant amended it or filed a memorandum developing his claims, while ignoring

---

[2] We note that Appellant filed a single notice of appeal listing both trial court docket numbers, implicating *Commonwealth v. Walker*, 185 A.3d 969 (Pa. 2018) (requiring appellants to file separate notices of appeal when a single order resolves issues arising on more than one lower court docket); *but see Commonwealth v. Young*, 280 A.3d 1049, 1057 (Pa. Super. 2022) (holding when there is a *Walker* defect in an appeal to which Pa.R.A.P. 902 applies, default position is to allow correction of defect unless good cause is shown by opposing party); *and see* Pa.R.A.P. 902(b) (stating that the failure to file a notice of appeal at each trial court docket does not affect the validity of the appeal, but subjects the appeal to remand for correction). In light of *Young* and Rule 902(b), this Court issued an order directing Appellant to file amended notices of appeal, with which he complied.

- 4 -

Appellant's request to amend the PCRA petition and file a memorandum of law developing his claims?

2. Whether the PCRA court erred when it dismissed Appellant's PCRA petition as untimely when Appellant had no knowledge that the witnesses - or the facts they had - even existed, and those facts are what the claims raised are predicated upon?

3. Whether the PCRA court erred when it dismissed Appellant's PCRA petition without a hearing when the facts in the petition are proven true, [and] would establish that the Commonwealth suppressed favorable evidence in violation of Appellant's due process rights?

4. Whether the PCRA court erred when it dismissed Appellant's PCRA petition without a hearing when the facts in the petition are proven true, [and] would establish that Appellant satisfies the newly[-]discovered evidence standard for relief?

Appellant's Brief at 5.

We begin by addressing Appellant's first issue, in which he argues the PCRA court erred by not granting his request to file an amended petition, which he raised in response to the court's Rule 907 notice. Appellant's entire argument is as follows:

A month after Appellant filed the instant PCRA petition - the fill-in-the[-]blank form provided in the institution that had no citation to case law - the PCRA court issued a [Rule] 907 [notice of its] intent to dismiss - before Appellant ever filed an amended petition or a memorandum of law developing his claims.

In response to the PCRA court's [Rule] 907 [notice]…, [Appellant] requested leave to file an amended PCRA petition and to file an accompanying memorandum developing his claims for relief - since he never amended the petition.

The PCRA court did not grant Appellant's request, instead dismiss[ing] his PCRA petition without affording Appellant the opportunity to raise and develop his claims.

Appellant request[s] a remand to amend the petition and file a memorandum pleading the facts and claims for relief.

*Id.* at 10-11 (citations omitted).

No relief is due. As the Commonwealth correctly observes, "PCRA courts are invested with great discretion to permit the amendment of a post-conviction petition." Commonwealth's Brief at 6 (quoting ***Commonwealth v. Mojica***, 242 A.3d 949, 954 (Pa. Super. 2020)). Although it is true that the amendment of a petition "shall be freely allowed to achieve substantial justice[,]" Pa.R.Crim.P. 905, Appellant does not explain what facts or details he would have set forth in an amended petition that would have changed the court's decision. Appellant also does not explain why he could not have stated in his original petition the unspecified 'facts and claims for relief' that he wished to aver in his amended petition. Accordingly, Appellant's vague argument fails to demonstrate an abuse of discretion by the PCRA court in denying his request to amend his petition.

In reviewing Appellant's remaining issues, we recognize that our standard of review regarding an order denying a petition under the PCRA is whether the determination of the PCRA court is supported by the evidence of record and is free of legal error. ***Commonwealth v. Ragan***, 923 A.2d 1169, 1170 (Pa. 2007). We must begin by addressing the timeliness of Appellant's petition, because the PCRA time limitations implicate our jurisdiction and may not be altered or disregarded in order to address the merits of a petition. ***See Commonwealth v. Bennett***, 930 A.2d 1264, 1267 (Pa. 2007). Under the PCRA, any petition for post-conviction relief, including a second or subsequent one, must be filed within one year of the date the judgment of sentence

becomes final, unless one of the following exceptions set forth in 42 Pa.C.S. § 9545(b)(1)(i)-(iii) applies:

> **(b) Time for filing petition.--**
>
> > (1) Any petition under this subchapter, including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final, unless the petition alleges and the petitioner proves that:
> >
> > > (i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;
> > >
> > > (ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or
> > >
> > > (iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

42 Pa.C.S. § 9545(b)(1)(i)-(iii). Additionally, section 9545(b)(2) requires any petition attempting to invoke one of these exceptions "be filed within one year of the date the claim could have been presented." 42 Pa.C.S. § 9545(b)(2).

Here, Appellant's judgment of sentence became final in 2016 when this Court affirmed his judgment of sentence and he did not seek further review with the Pennsylvania Supreme Court. Thus, his instant petition filed in 2024 is patently untimely, and for this Court to have jurisdiction to review the merits thereof, Appellant must prove he meets one of the exceptions to the timeliness requirements set forth in 42 Pa.C.S. § 9545(b).

In this regard, Appellant argues he meets the newly-discovered-fact exception of section 9545(b)(1)(ii) based on affidavits he received from two individuals, Surge Santiago and Tyheed Brown. Appellant claims that in Santiago's affidavit, he averred that he "told [D]etectives Thomas Gaul and James Pitts that he witnessed Chevere's murder[,] and identified the ones responsible as people other than Appellant." Appellant's Brief at 6. In Brown's affidavit, he stated he told Detectives Gaul and Pitts that Richard Ansley was with Brown at the time of the murder, which refuted Ansley's statement to police that he "witnessed the murder of Chevere and implicated Appellant." *Id.* Appellant claims the Commonwealth suppressed Santiago's and Brown's exculpatory statements in violation of *Brady v. Maryland*, 373 U.S. 83 (1963).

Appellant further argues he "had no knowledge" that these exculpatory witnesses "even existed," and he did not know about "the favorable information they possessed[,]" until "a clergyman introduced Appellant to Brown, Santiago, and their exculpatory revelations." *Id.* at 11, 17. In Appellant's *pro se* petition, he elaborated on how he discovered these witnesses as follows:

> On Oct. 25th, 2024, the Eman to SCI Rockview pulled [Appellant] aside after [the] religious prayer and stated a brother in our community ask[ed] for advice pertaining [to Appellant's] case[.] That is when Tyheed Brown brought what he knew about [Appellant's] case.[] Tyheed Brown and Surge Santiago [were] talking about [Appellant] and Santiago stated he had witnessed the murder[.] This was brought to [Appellant] on [December 5, 2024].

PCRA Petition, 12/30/24, at 4. Appellant concludes that, "[t]herefore, this evidence was not obtainable … with due diligence." Appellant's Brief at 17-18.

In dismissing Appellant's petition as untimely, the PCRA court reasoned as follows:

> [Appellant] alleges that the affidavits of Santiago and Brown are newly-discovered evidence as they were provided to him on December 5, 2024. To qualify for the newly-discovered[-]fact exception, a petitioner needs to establish that the facts forming the basis of the claim were unknown to him and could not have been obtained by the exercise of due diligence. **Commonwealth v. Burton**, 158 A.3d … 618, 629 (Pa. 2017). Though [Appellant] alleges that he first learned of this new information when a religious leader at this institution allegedly introduced him to Santiago and Brown on December 5, 2024, [Appellant] does not establish why he could not have obtained this information earlier with the exercise of due diligence.

PCOO at 5.

We disagree with the court that Appellant failed to prove he acted with due diligence. "Due diligence demands that the petitioner take **reasonable** steps to protect his own interests." **Commonwealth v. Brown**, 111 A.3d 171, 176 (Pa. Super. 2015) (emphasis added) (citing **Commonwealth v. Carr**, 768 A.2d 1164, 1168 (Pa. Super. 2001)). Here, we fail to see what reasonable steps Appellant could have taken to discover the information known by Santiago and Brown, where Appellant insists — and nothing in the record belies — that he was unaware of these witnesses' existence prior to their approaching him in December of 2024. **See** Appellant's Brief at 11 ("Appellant had no knowledge of the newly discovered exculpatory

- 9 -

evidence/witness[es] even existed until the witnesses themselves informed him of it[;] thus, the PCRA court incorrectly found Appellant's petition untimely."). As Appellant has demonstrated the information proffered by Santiago and Brown was previously unknown to him, and he could not have discovered it sooner in the exercise of due diligence, we conclude he has satisfied the timeliness exception of section 9545(b)(1)(ii).

Nevertheless, we agree with the PCRA court's alternative conclusion that Appellant has failed to prove this after-discovered evidence warrants a new trial. *See* PCOO at 6-7. This Court has explained:

> To be granted a new trial based on the basis of after-discovered evidence:
>
>> Defendant must demonstrate that the evidence: (1) could not have been obtained prior to the conclusion of the trial by the exercise of reasonable diligence; (2) is not merely corroborative or cumulative; (3) will not be used solely to impeach the credibility of a witness; and (4) would likely result in a different verdict if a new trial were granted.
>
> The test is conjunctive; the defendant must show by a preponderance of the evidence that each of these factors has been met in order for a new trial to be warranted.

*Commonwealth v. Padillas*, 997 A.2d 356, 363 (Pa. Super. 2010) (cleaned up).

Instantly, we begin by addressing Brown's affidavit. Therein, Brown stated he was in his uncle's clothing store with "Black Rich" when people came in "saying 'Omar' got shot." PCRA Petition at Exhibit A (Affidavit of Tyheed Brown); *see also id.* (Brown's stating that "Black Rich was with us during the shooting"). Brown further averred that "[a] few months" after the shooting,

- 10 -

he was approached by former detective James Pitts, who told Brown that he had heard Brown's uncle was going to "help J. Rock[,]" which the record indicates is a nickname used by Appellant. *Id.* *See also* Motion to Sever, 5/20/14, at Attachment "Investigation Interview Record" (Statement of Raymond Soto) at 2 (Soto's stating about Appellant, "J-Rock is my cousin too. We also call him Joey."). Brown claimed in his affidavit that Pitts said to tell his uncle that "if he goes to court[, Pitts would] shut down his store." *Id.* (unnecessary capitalization and quotation marks omitted). Brown stated that he told his uncle what Pitts had threatened. *Id.*

Appellant now argues that "Black Rich" is a nickname for Richard Ansley, who had told police he witnessed the shooting, and identified Appellant from a photo array as the shooter. *See* PCOO at 7. According to Appellant, because Brown claimed in the affidavit that Ansley was with him at the time of the murder, Brown's affidavit proves that "Ansley was lying about witnessing Appellant kill Chevere." Appellant's Brief at 14. Thus, Appellant insists Brown's affidavit is exculpatory evidence.

However, if a new trial were granted, Brown's testimony would solely be used to impeach Ansley's testimony that he witnessed the shooting and could identify Appellant as the shooter. In other words, it would be used solely to impeach the credibility of a witness, and does not meet the third prong of the after-discovered-evidence test.

Additionally, the PCRA court observed that, to the extent "Brown writes that … Pitts allegedly threatened Brown's uncle not to testify on [Appellant's]

behalf, … his affidavit does not state what his uncle supposedly would have testified to in [Appellant's] defense or present any exculpatory information whatsoever." PCOO at 6. "Furthermore, it appears that Brown's potential testimony would not have been admissible in [Appellant's] trial, as it is hearsay." **Id.** (citing **Commonwealth v. Houseman**, 226 A.3d 1249, 1263 (Pa. 2020) (holding out-of-court statements offered to prove the truth of the matter asserted are hearsay and are generally inadmissible at trial); Pa.R.E. 802 ("Hearsay is not admissible except as provided by these rules, by other rules prescribed by the Pennsylvania Supreme Court, or by statute.")). We agree.

Next, pertaining to Santiago's affidavit, he stated he witnessed a man he knew as "Joey" shoot "O," who the PCRA court presumed referred to Chevere. **See** PCRA Petition at Exhibit B (Affidavit of Santiago Surge); **see also** PCOO at 6 n.1 ("Without more information, this [c]ourt presumes that 'O' refers to Louis Omar Chevere…."). Santiago claimed he stayed on the scene of the shooting and told Pitts what he had witnessed. **See** PCRA Petition at Exhibit B (Affidavit of Santiago Surge). He also stated that he had "made [himself] available to the [d]etectives from the very onset" of the case and was "still willing to testify on … behalf of [Appellant]…." **Id.** According to Appellant, since Santiago told the detectives "he witnessed the murder of Chevere, … identified the individuals responsible[,] and said that it was not Appellant, … Santiago's averment is exculpatory" and the prosecution had a

responsibility to turn it over to the defense under ***Brady***. Appellant's Brief at 13.

Initially, the Commonwealth points out that Raymond Soto, Appellant's cousin and co-conspirator in the murder of Fernandez-Rivera, told police in a statement — which is contained in the certified record — that Appellant goes by the nickname, "Joey," and, thus, "it appears that Santiago's statement is ***inculpatory*** of [Appellant]." Commonwealth's Brief at 11 (emphasis added); ***see also*** Motion to Sever at Attachment "Investigation Interview Record" (Statement of Raymond Soto) at 2. Additionally, although both Santiago and Brown claim they talked to detectives, Appellant has no proof this is true and the Commonwealth suppressed their statements. Because Appellant has not demonstrated that Santiago's statement is exculpatory, or that either his or Brown's statements were suppressed by the Commonwealth, he has not established a ***Brady*** violation. ***See Commonwealth v. Haskins***, 60 A.3d 538, 547 (Pa. Super. 2012) ("[T]o establish a ***Brady*** violation, a defendant must demonstrate that: (1) the evidence was suppressed by the Commonwealth, either willfully or inadvertently; (2) the evidence was favorable to the defendant; and (3) the evidence was material, in that its omission resulted in prejudice to the defendant.").[3]

_____

[3] We note that Appellant also contends the Commonwealth violated ***Brady*** by not disclosing "to Appellant the video recordings/footage obtained during the investigation of Fernandez-Rivera['s] and Chevere's murders." Appellant's Brief at 6 (citation to the record omitted). Appellant did not raise this claim
*(Footnote Continued Next Page)*

Finally, we agree with the PCRA court that neither Santiago's nor Brown's affidavits "present[] allegations or evidence which would be likely to result in a different outcome at trial, as there was overwhelming other evidence of [Appellant's] guilt." PCOO at 7. The court explained:

> In Chevere's murder, Richard Ansley and Anthony Morales identified [Appellant] from a photo array as the shooter. After the murder, [Appellant], confessed to killing Chevere to Eliana Vasquez, his co-defendant and paramour. [Appellant] then conspired with Vasquez, Shawn Poindexter, and Raymond Soto to murder Fernandez-Rivera after Vasquez identified her as a potential witness against him in Chevere's murder. At the time of [Appellant's] pleas, two out of the his three co-defendants had already pled guilty and agreed to testify against him at trial. Vasquez testified against [Appellant] at his preliminary hearing in both murders and was prepared to testify against [Appellant] at trial. Soto also testified at [Appellant's] preliminary hearing and was prepared to testify at trial about the planning and conspiracy to murder Fernandez-Rivera. On April 13, 2015, following an extensive written and oral colloquy, [Appellant] admitted to killing both Chevere and Fernandez-Rivera.

*Id.*

In light of this record, Appellant has failed to demonstrate that the information contained in Brown's and Santiago's affidavits was exculpatory, suppressed by the Commonwealth, or would likely result in a different outcome if his case proceeded to trial. Therefore, the PCRA court did not err in dismissing his post-conviction petition.

Order affirmed.

_____

in his PCRA petition; thus, it is waived. **See** Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal.").

- 14 -

Judgment Entered.

Benjamin D. Kohler

Benjamin D. Kohler, Esq.
Prothonotary


Date: <u>2/10/2026</u>