J-S24013-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MARIO COURTLIN PARKER | : | |
| | : | |
| Appellant | : | No. 687 WDA 2020 |

Appeal from the PCRA Order Entered June 10, 2020
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0007624-2009

BEFORE:   DUBOW, J., KING, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY DUBOW, J.:                    **FILED:  September 20, 2021**

Appellant, Mario Courtlin Parker, appeals from the June 10, 2020 Order entered in the Allegheny County Court of Common Pleas denying his Petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. § 9541-96.  After careful review, we affirm.

The relevant facts and procedural history are as follows.  On May 1, 2009, Appellant and a second man shot and killed two victims in the victims' home in Pittsburgh.  Appellant and the other man also held three witnesses—Laron Thornton, Michael Morrison, and D'Andre[1] Freeman—at gunpoint.  Although Appellant had attempted to conceal his identity by wearing a ski

---

[*] Former Justice specially assigned to the Superior Court.

[1] D'Andre Freeman is also referred to as Deandre Freeman throughout the record.

mask, Freeman saw Appellant's face when Appellant partially lifted up his ski mask, and he recognized Appellant as someone he knew from the neighborhood. At a formal interview conducted by police detectives a few hours after the incident, Freeman identified Appellant in a photo array.[2] Laron Thornton also identified Appellant as one of the actors involved and picked him out of a photo array later that day.

Police arrested Appellant and charged him with numerous offenses arising from the murders. Prior to trial, Appellant filed a Motion to, *inter alia*, suppress Thornton's identification of Appellant, which the trial court denied.

At trial, Thornton could not identify Appellant. Over Appellant's objection, however, a detective testified to Thornton's pre-trial identification of Appellant. Freeman also testified at trial and identified Appellant as the perpetrator. On July 2, 2010, a jury convicted Appellant of two counts of first-degree Murder, Burglary, Possession of a Firearm Prohibited, five counts of Unlawful Restraint, and Criminal Conspiracy to Commit Homicide. On September 20, 2010, the court sentenced Appellant to two life sentences for the murders and 20 to 40 years' imprisonment on the remaining convictions.

Appellant filed a direct appeal to this Court challenging the trial court's denial of his Motion to Suppress Thornton's pre-trial and in-court identification of Appellant, the admission of the detective's testimony that Thornton had identified Appellant prior to trial, and the sufficiency of the evidence. On

---

[2] Pittsburgh Police placed Freeman in its witness protection program shortly after the murders. N.T. Hr'g, 4/1/19, at 37.

March 5, 2013, this Court affirmed Appellant's Judgment of Sentence, and the Pennsylvania Supreme Court denied further review. *See Commonwealth v. Parker*, 2013 WL 11273762 (Pa. Super. March 5, 2013) (unpublished memorandum); *appeal denied*, 72 A.3d 602 (Pa. 2013).

On March 17, 2014, Appellant filed a timely first PCRA Petition raising numerous ineffective assistance of counsel claims. On April 22, 2015, the PCRA court denied Appellant's Petition. Appellant filed an appeal to this Court.

Prior to our disposition of Appellant's appeal, Appellant filed a Petition requesting that we remand for an evidentiary hearing based on after-discovered evidence. In support of this request, he submitted an unsworn February 23, 2016 affidavit obtained from trial witness D'Andre Freeman. In the affidavit, Freeman stated that, despite his preliminary hearing and trial testimony identifying Appellant as one of the perpetrators of the 2010 murders, he did not actually recognize either gunman. Affidavit, 2/23/16, at ¶ 4. He stated that he had been drinking and smoking marijuana on the evening of the murders and was under the influence at both the time of the murders and when the police took him to the police station to be interviewed. *Id.* at ¶ 2. He stated that he felt pressured by the police to identify Appellant and he felt like he could not disagree with them. *Id.* at ¶¶ 5-6. He stated that Appellant's trial counsel never contacted him prior to trial and that his first discussion about the case with anyone other than the police took place in April of 2015 when an investigator for Appellant contacted him. *Id.* at ¶ 7. Freeman asserted that he was not ready to talk with anyone at that time, so

- 3 -

he falsely told the investigator that his trial testimony was the truth. *Id.* He stated that the first time he told anyone he identified "the wrong person" was on February 11, 2016, when he met with Appellant's PCRA counsel, Attorney Emily McNally. *Id.* at ¶ 8. In his affidavit, Freeman stated he "do[es] not believe" Appellant was one of the gunmen responsible for the Robinson murders and he is willing to testify to that effect under oath. *Id.* at ¶ 9.

On August 10, 2016, this Court denied Appellant's Petition for Remand finding that Appellant had not asserted in it that he could not have obtained Freeman's recantation at or prior to the conclusion of trial through reasonable diligence. This Court also noted Freeman was not the only witness to identify Appellant and affirmed the Order dismissing Appellant's first PCRA Petition. *See Commonwealth v. Parker*, 153 A.3d 332 (Pa. Super. 2016) (unpublished memorandum). The Pennsylvania Supreme Court denied further review. *See Commonwealth v. Parker*, 156 A.3d 333 (Pa. 2017).

On March 21, 2017, Appellant filed a counselled second PCRA Petition, raising again the after-discovered evidence claim outlined above and requesting a new trial. The PCRA court dismissed this Petition, concluding that Appellant had previously litigated this claim before the Superior Court. On appeal, we vacated the PCRA court's Order and remanded for an evidentiary hearing on Appellant's after-discovered evidence claim.[3]

_____

[3] We found that Appellant's second PCRA Petition overcame the PCRA's one-year jurisdictional time bar because Appellant filed it within 60 days of the

The PCRA court held hearings on Appellant's second PCRA Petition on April 1, 2019, and April 23, 2019, at which Appellant presented the testimony of D'Andre Freeman; Barry Fox, Appellant's counsel's private investigator; Attorney McNally; and Detectives Martin Kail and Scott Evans.

Freeman testified that he was intoxicated on the night in question when police interviewed him and that he did not recall picking Appellant out of a photo array. N.T., 4/1/19, at 7-9 He conceded that he did testify at the preliminary hearing and at trial that Appellant was one of the perpetrators. *Id.* at 9. Freeman asserted that, after Appellant's trial, an investigator went to his house, but he refused to speak with the investigator. *Id.* at 11. However, he eventually met with prior PCRA counsel and provided a signed affidavit in February 2016, in which he stated that he had testified falsely at trial when he identified Appellant as one of the perpetrators and that he did not actually recognize either shooter. *Id.* at 10-12. Freeman confirmed, however, that not once during his trial testimony did he indicate to the court that he was unsure of his identification of Appellant. *Id.* at 34.

---

Pennsylvania Supreme Court's February 22, 2017 denial of his Petition for Allowance of Appeal. ***Commonwealth v. Parker***, 2018 WL 1939823 at *4 (Pa. Super. 2018) (citing 42 Pa.C.S. § 9545(b)(2)). We further found that the record did not support the PCRA court's conclusion that Appellant had previously litigated his claim before this Court because we did not address the claim on its merits; instead, we concluded that Appellant failed to aver in his Petition for Remand that he "could not have obtained Freeman's recantation at or prior to the conclusion of trial through reasonable diligence." ***Id.*** at *4-5 (citation omitted).

On cross-examination, the Commonwealth attempted to demonstrate that Freeman's recantation was not truthful and that he was motivated solely by fear. The Commonwealth elicited Freeman's testimony that, when he called 911 to report the shooting, he asked the operator not to send police officers to his house so that no one would know that he called the police or where he lived. *Id.* at 20-21, 37. Freeman also testified that prior to testifying at trial, he asked that the police place him in its witness protection program and that the police complied. *Id.* at 21, 37-38. He agreed that when he testified at trial, he still felt scared. *Id.* at 28. He acknowledged omitting from the 2016 affidavit that he had affirmatively identified Appellant as the shooter during his police interview.[4] *Id.* at 30-31. Freeman also testified that about two months after the murders an unknown male approached him on the street and informed him that he "got the wrong person" convicted and warned Freeman to "be careful," but claimed that he did not perceive this as a threat. *Id.* at 23-25.

Pittsburgh Police Detective Martin Kail testified that he interviewed Freeman in the fall of 2018, approximately two years after Freeman's recantation affidavit. *Id.* at 48. He testified that Freeman informed him during that interview that Freeman felt pressured into giving prior PCRA counsel the affidavit. *Id.* at 50. He also testified that he felt threatened by an unknown male who had approached him on the street and referred to

_____

[4] He also testified that he did not write or type the affidavit himself. N.T. Hr'g at 30.

- 6 -

Appellant by name. *Id.* at 50-51. Detective Kail testified that Freeman indicated to him that his prior trial testimony identifying Appellant as one of the perpetrators was truthful. *Id.* at 51.

Following the hearings, the PCRA court issued a Pa.R.Crim.P. 907 Notice to Dismiss explaining that it had found Freeman's recantation testimony incredible and concluding that Appellant had failed to establish that a new trial, if granted, would likely result in a different verdict. Rule 907 Notice, 2/18/20, at 4.

On March 9, 2020, Appellant filed a Response to the court's Rule 907 Notice. On June 10, 2020, the PCRA court dismissed Appellant's Petition as meritless. This timely appeal followed.[5]

Appellant raises the following issues on appeal:

1. Whether the PCRA[] court erred in finding that the eyewitness, in recanting his prior testimony, was not credible, when he has made any number of conflicting statements and thus the very inconsistency of his various statements adversely affects his credibility and mandates further review [?]

2. Whether the fact that the eyewitness has made a number of inconsistent statements, including a recantation of his eyewitness identification, dictates that a fact-finder must hear and evaluate his testimony at a new trial[?]

Appellant's Brief at 5.

Both of Appellant's issues challenge the PCRA court's denial of Appellant's after-discovered evidence claim.

---

[5] The PCRA court did not order Appellant to file a Pa.R.A.P. 1925(b) Statement.

Proper appellate review of a PCRA court's dismissal of a PCRA petition is limited to the examination of "whether the PCRA court's determination is supported by the record and free of legal error." ***Commonwealth v. Miller***, 102 A.3d 988, 992 (Pa. Super. 2014) (citation omitted). "The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record." ***Commonwealth v. Lawson***, 90 A.3d 1, 4 (Pa. Super. 2014) (citations omitted). "This Court grants great deference to the findings of the PCRA court, and we will not disturb those findings merely because the record could support a contrary holding." ***Commonwealth v. Hickman***, 799 A.2d 136, 140 (Pa. Super. 2002) (citation omitted). In contrast, we review the PCRA court's legal conclusions *de novo*. ***Commonwealth v. Henkel***, 90 A.3d 16, 20 (Pa. Super. 2014) (*en banc*).

To receive a new trial based on after-discovered evidence, a petitioner must satisfy a four-part test requiring

> the petitioner to demonstrate the [after-discovered] evidence: (1) could not have been obtained prior to the conclusion of the trial by the exercise of reasonable diligence; (2) is not merely corroborative or cumulative; (3) will not be used solely to impeach the credibility of a witness; and (4) would likely result in a different verdict if a new trial were granted.

***Commonwealth v. Small***, 189 A.3d 961, 972 (Pa. 2018) (citing ***Commonwealth v. Pagan***, 950 A.2d 270, 292 (Pa. 2008)). "The test is conjunctive; the [petitioner] must show by a preponderance of the evidence that each of these factors has been met in order for a new trial to be warranted." ***Commonwealth v. Padillas***, 997 A.2d 356, 363 (Pa. Super.

2010). In addition, the after-discovered evidence must be producible and admissible. *Small*, 189 A.3d at 972.

The "salutary goal of the after-discovered evidence rule [is] to limit continued litigation without being so rigid as to shut out [after-]discovered evidence **from a credible source** which may lead to a true and proper judgment." *Id.* at 975 (citation omitted, emphasis added). A request for a new trial based on recantation testimony hinges on the credibility of the testimony. *Id.*

It is well-settled that "recantation is one of the least reliable forms of proof, particularly when it constitutes an admission of perjury." *Commonwealth v. McCracken*, 659 A.2d 541, 545 (Pa. 1995). Thus, it is within the province of the PCRA court to judge the credibility of the recantation testimony. *Small*, 189 A.3d at 977. The court must deny a defendant's request for a new trial unless the court is satisfied that the recantation is true. *Id.* "[A]n appellate court may not interfere with the denial or granting of a new trial where the sole ground is the alleged recantation of state witnesses unless there has been a clear abuse of discretion." *McCracken*, 659 A.2d at 545 (citation omitted).

Appellant's issues challenge: (1) the PCRA court's finding that Freeman's recantation testimony was not credible; (2) the weight the PCRA court gave to Freeman's testimony; and (3) the court's conclusion that Appellant had failed to demonstrate by a preponderance of the evidence that a different

verdict would result if the court granted him a new trial.[6]  Appellant's Brief at 13-23.  Conceding that Freeman offered numerous conflicting statements, Appellant essentially argues that the PCRA court's finding that Freeman's PCRA hearing testimony was not credible amounted to the court "[p]icking and choosing, in an arbitrary manner" which of Freeman's statements to disbelieve.  *Id.* at 21.  In other words, Appellant claims that, precisely because Freeman has offered inconsistent statements for more than a decade, the PCRA court should not determine whether his current testimony is credible; rather, he asserts that the PCRA court should order a new trial so that a jury may weigh Freeman's credibility and determine which of his inconsistent statements to believe.  *Id.*

Appellant's argument flies in the face of our well-established case law that it is, as a threshold matter, the job of the PCRA court to determine the credibility of a recantation witness's testimony.  Moreover, Appellant's assertion that a jury should consider Freeman's conflicting statements and determine which to believe amounts to no more than unfounded speculation—and not proof by a preponderance of the evidence—that a new jury would reach a different verdict if presented with Freeman's testimony.

Furthermore, the record reflects that, in accordance with its mandate, the PCRA court weighed the testimony presented at the hearing, including that

---

[6] Appellant has neglected to divide the Argument section of his brief "into as many parts as there are questions to be argued" as required by Rule of Appellate Procedure 2119(a).  Pa.R.A.P. 2119(a).

of Freeman and Detective Kail. The PCRA court found Freeman's testimony not credible, noting that Freeman had offered "multiple conflicting statements throughout the course of this case." Rule 907 Notice at 5. Conversely, the court found credible Detective Kail's testimony that Freeman informed him that Freeman had told the truth at Appellant's trial, that Freeman had felt threatened after being approached by an unidentified man who invoked Appellant's name, and that he had felt pressured into providing the 2016 recantation affidavit. The record, thus, supports the trial court's conclusion that Appellant failed to demonstrate that a new trial would likely result in a different verdict. Because Appellant did not satisfy this prong of the after-discovered evidence test, the PCRA court properly found that his after-discovered evidence claim lacked merit.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/20/2021