J-A26030-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| BRIAN W MCKANT | : | |
| | : | |
| Appellant | : | No. 3087 EDA 2022 |

Appeal from the PCRA Order Entered December 1, 2022
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-1300294-2006

BEFORE:  DUBOW, J., McLAUGHLIN, J., and KING, J.

MEMORANDUM BY McLAUGHLIN, J.:                **FILED APRIL 2, 2024**

Brian W. McKant appeals the order entered denying his Post Conviction Relief Act ("PCRA") petition. 42 Pa.C.S.A. §§ 9541-9546. He claims the PCRA court erred in rejecting his claims of after discovered evidence. We affirm.

In August 2007, a jury convicted McKant of first-degree murder, possession of an instrument of crime, and firearms not to be carried without a license.[1] We previously summarized the facts of McKant's case.

> On January 9, 2006, [McKant] and two friends, Jerrell Smith and Bryheem Baldwin, were playing a dice game in front of 1117 West Tioga Street, Philadelphia, Pennsylvania. Lamont Sparrow approached [McKant] and his friends. Hostile words were exchanged between the men.[1] Sparrow then walked away from the other men towards a basketball hoop at the end of West Tioga Street.
>
> Baldwin watched [McKant] walk up behind Sparrow and pull a handgun from his right jacket pocket. [McKant] then shot

---

[1] 18 Pa.C.S.A. §§ 2502(a), 907(a), and 6106(a)(1), respectively.

Sparrow twice in the back of the head. [McKant] immediately fled the scene. Smith and Baldwin also left the scene and ran towards their residences.

When police arrived at the scene, Sparrow was lying face down in the street covered with a white sheet. Witnesses told police that they heard two "pops" coming from the direction of the basketball hoop and saw [McKant], Smith, and Baldwin run in different directions.

Several days after the shooting, Smith and Baldwin both were questioned separately regarding the shooting. Both men stated that [McKant] shot Sparrow. The two men also appeared at the district attorney's office and provided signed statements, again implicating [McKant] as the shooter. On April 4, 2006, after eluding police for several months, [McKant] was arrested and charged with shooting Sparrow.

Prior to trial, Smith and Baldwin both decided not to testify against [McKant] and failed to appear at a preliminary hearing. The trial court ordered the two men to appear. At a rescheduled preliminary hearing, Baldwin appeared and recanted the statement he made to police. He testified that he did not see who killed Sparrow but that he heard the shots and ran from the scene.

---

[1] The animosity between the men stem[med] from a prior incident, in which [McKant] was allegedly shot by Sparrow's cousin, Robert Nicholas. On February 27, 2005, [McKant] was shot in the neck. [McKant] gave a statement to police where he identified Nicholas as the shooter. However, the case against Nicholas was dismissed when [McKant] recanted his statement and declined to identify Nicholas as the shooter. [McKant] told Smith that Sparrow was going to kill [McKant] for implicating Nicholas in the crime.

*Commonwealth v. McKant*, No. 95 EDA 2013, 2014 WL 10986730, at *1

(Pa.Super. filed Feb. 21, 2014) (unpublished mem.) (quoting

*Commonwealth v. McKant*, No. 2813 EDA 2007, 972 A.2d 557, at *1–*3.

(Pa.Super. filed March 6, 2009) (unpublished mem.), *appeal denied*,

*Commonwealth v. McKant*, 983 A.2d 727 (Table) (Pa. filed Nov. 5, 2009)).

We affirmed the judgment of sentence, and our Supreme Court denied allowance of appeal in 2009.

McKant filed the instant PCRA petition, his third, in May 2021. **See** Second/Successive PCRA Petition, filed 5/20/21.[2] He claimed "newly discovered evidence that was not disclosed to the defense due to governmental interference." **Id.** at 3. This evidence included former detective Phillip Nordo's misconduct of sexually assaulting, threatening, and coercing witnesses as well as a "decades long history/pattern and practice of abuse and fabrication of evidence." **Id.** at 6. McKant maintained that his failure to raise the claim against Nordo was due to the Commonwealth's failure to relay this information. **See id.** at 12-13. He claimed that he could not have obtained this information with the exercise of due diligence because of "his limited ability to conduct an investigation from prison" and the information was only made public "after there were reports in the news[.]" **Id.** at 14.

McKant also claimed newly discovered evidence that Detective Micah Spotwood "acted consistent[ly] in this case with a newly identified unconstitutional pattern and practice within the Philadelphia Police Homicide Unit." **Id.** at 18. He listed numerous tactics allegedly used by the Homicide Unit including verbal and physical abuse of witnesses or suspects. He also alleged that these tactics were identified by Common Pleas Judge Teresa

---

[2] McKant filed his first PCRA petition on August 23, 2010, and his second on November 2, 2017. **See McKant**, 2014 WL 10986730, at *2; **Commonwealth v. McKant**, No. 113 EDA 2020, 2021 WL 1854310, at *1 (Pa.Super. filed May 10, 2021) (unpublished mem.)

Sarmina in **Commonwealth v. Dwayne Thorpe** (CP-51-CR-0011433-2008), an unpublished trial court opinion authored in June 2018. **See id.** at 18, 27. McKant argued that he first learned of these practices "because [PCRA] counsel has represented literally hundreds of defendants who have been convicted of homicides in Philadelphia that she was able to discern the existence of a pattern and practice." **Id.** at 28 (emphasis removed). He also maintained that he could not have uncovered this evidence earlier because of his incarcerated status. McKant claimed that in his case, Detective Spotwood would not allow him to use the restroom while being interviewed and threatened "that if [McKant] didn't confess to him he would get the death penalty." **Id.** at 20, 21. McKant also referenced **Commonwealth v. Reuben White** (CP-51-CR-0003382-2013), another unpublished trial court opinion, where "it was alleged that Det. Spotwood . . . used isolation and threats in order to get witnesses . . . to sign statements." **Id.** at 19. McKant further claimed that Mr. White filed a civil suit for malicious prosecution against Detective Spotwood.

In a supplemental PCRA petition, McKant claimed he discovered new evidence in the homicide detectives' file ("H file") and the prosecutor's file ("DAO file") related to his case, that he did not receive from the Commonwealth until December 20, 2021. Supplemental PCRA Petition, filed 2/7/22; Uncontested Motion for Time for Further Investigation and Leave to Supplement, filed 12/24/21, at 3 (noting that PCRA counsel received an electronic copy of H file on 12/20/21).

- 4 -

The H file contained the criminal records of two individuals, Christopher Denmark and Jermaine Winn. The H file also contained a handwritten note marked "To Do" and stating that detectives intended to interview Denmark and Winn. **See** Exhibit to Supplemental PCRA Petition, filed Feb. 7, 2022, at 1 (unpaginated); H File at Bates 5.[3] The file contained a police report related to Sparrow, the decedent in McKant's case. Handwriting on the report read, "threaten[ed] by Jerell Smith[.] Sparrow wanted Jerel[l] to stop selling drugs to his mother." H File at Bates 149. Additionally, the H file included a Crime Scene Unit Service Report for a firearm, dated months after the murder in McKant's case. A fingerprint examination of the gun yielded "negative" results. H File at Bates 513. The H file also had paperwork concerning the seizure of a vehicle belonging to Bryanne McKant, McKant's sister, as well as vehicle information noting that a vehicle was not "used in the incident by the offender." H File at Bates 75, 207. McKant maintained that all the evidence recovered from the H file was unknown to him and could not be ascertained with the exercise of due diligence.

The court held a brief hearing on December 1, 2022. It concluded that "Nordo had minimal involvement in this case, . . . is not alleged to have done anything, and . . . the extent of his criminal conduct which came to light later, I don't believe that that warrants a new trial." N.T., 12/1/22, at 5-6. It also concluded "as to Detective Spotwood, there's no history of misconduct or of

---

[3] The second supplemental petition refers to items in the H File by the Bates numbers on the copies attached to the petition. We do the same.

any other allegations. So I don't believe that that would warrant a new trial either." *Id.* at 7. Regarding the crime scene report for the firearm found in the H file, the court concluded "without fingerprint results, I don't think it would have been sufficient to overturn the verdict." *Id.* at 10. Following the hearing, the court entered an order dismissing McKant's petition, and this timely appeal followed.

McKant raises three issues on appeal:

   I.    Did the PCRA Court err in finding no merit to [McKant's] claim of newly discovered evidence of misconduct by Det. Nordo which was not disclosed by the Commonwealth in violation of [McKant's] rights under the Fifth, Sixth and Fourteenth Amendments of the U.S. Constitution and Article I sec. 9 of the PA Constitution?

   II.    Did the PCRA Court err in finding no merit to [McKant's] claim of newly discovered evidence of an unconstitutional interrogation pattern and practice utilized by Det. Spotwood which violated [McKant's] rights under the Sixth and Fourteenth Amendments of the U.S. Constitution and Article I sec. 9 of the PA Constitution?

   III.    Did the PCRA Court err in finding no merit to [McKant's] claim of newly discovered suppressed evidence which had been contained in the H/DAO files related to 1) Smith having a motive and means to kill Sparrow 2) evidence of a gun and 3) seizure of [McKant's] sister's vehicle.

McKant's Br. at 3 (suggested answers omitted).

When reviewing the denial of PCRA relief, "[w]e must determine whether the PCRA court's ruling is supported by the record and free of legal error."

*Commonwealth v. Presley*, 193 A.3d 436, 442 (Pa.Super. 2018) (citation omitted).

We first address the timeliness of the subject petition. The PCRA court "deemed" the petition timely because the Commonwealth "declined" to address the timeliness of the subject petition and supplements. Rule 1925(a) Opinion, filed 4/19/23, at 8. This was improper. As is well known, settled law treats the PCRA's time restrictions as restrictions on courts' subject matter jurisdiction, which cannot be created by consent or waiver. *See Commonwealth v. Reid*, 235 A.3d 1124, 1140, 1143 n.8 & n.10 (Pa. 2020). Therefore, the court should have assessed the timeliness of the petition *sua sponte*. *See Commonwealth v. Beatty*, 207 A.3d 957, 961 (Pa.Super. 2019). When a PCRA court lacks jurisdiction, we likewise lack jurisdiction and may raise the question ourselves. *See Commonwealth v. Harris*, 114 A.3d 1, 6 (Pa.Super. 2015).

Any petition for relief under the PCRA must be filed within one year after the petitioner's judgment of sentence has become final, unless the petition pleads, and the petitioner proves, that an exception applies. 42 Pa.C.S.A. § 9545(b)(1); *Commonwealth v. Larkin*, 235 A.3d 350, 355-56 (Pa.Super. 2020) (*en banc*). A judgment of sentence is final "at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review." 42 Pa.C.S.A. § 9545(b)(3). The exceptions include governmental interference and new facts. *See id.* at § 9545(b)(1)(i)-(ii). The

governmental interference exception applies where the petitioner pleads and proves that "the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States[.]" *Id.* at § 9545(b)(1)(i). The new facts exception requires the petitioner to plead and prove that "the facts upon which the claim is predicated were unknown" and "could not have been ascertained by the exercise of due diligence[.]" *Id.* at § 9545(b)(1)(ii). The petitioner must raise any exception within one year that the claim could have been raised. *Id.* at § 9545(b)(2).

McKant's judgment of sentence became final on February 3, 2010, when his time to file a petition for writ of *certiorari* with the United States Supreme Court expired. He therefore had until February 3, 2011, to file a timely petition and the instant petition filed 10 years later is patently untimely. McKant claimed the governmental interference and new fact time bar exceptions and the PCRA court determined that McKant satisfied both.

We agree that McKant satisfied the new fact exception regarding Nordo's misconduct and the evidence recovered in the H file. He had no knowledge of the evidence and could not have obtained said evidence with the exercise of due diligence. As McKant noted in his PCRA petition, "[o]nly the DA's Office and/or the Police Department had access to evidence" of Nordo's misconduct stemming back to 2005 and McKant only gained access to the H file in December 2021. Second/Supplemental PCRA Petition, at 13; Uncontested

Motion for Time for Further Investigation and Leave to Supplement, at 3; *see*

***Commonwealth v. Brown***, 111 A.3d 171, 176-177 (Pa.Super. 2015) (new

fact exception satisfied where petitioner pleads and proves that: "1) the facts

upon which the claim was predicated were unknown and 2) could not have

been ascertained by the exercise of due diligence") (citation omitted)

(emphasis removed).

However, McKant fails to satisfy the new fact exception for his claims

against Detective Spotwood. The alleged abusive tactics of Detective

Spotwood were known to McKant. In his PCRA petition, McKant claimed that

Detective Spotwood prevented him from using the restroom during his

interrogation. Furthermore, at least one witness testified at trial that they

were threatened by the detectives, one of whom was Detective Spotwood.

***See*** N.T., 8/7/07, at 15, 35; Second/Supplemental PCRA Petition, at 21. Even

assuming McKant did not know about the alleged pattern of unconstitutional

interviewing tactics of the Philadelphia Homicide Unit, he knew of Detective

Spotwood's alleged conduct. McKant fails to plead and prove the new-fact

exception for this claim, as such we do not address its merits.

We now turn to the substance of McKant's appellate issues. McKant

claims he is entitled to a new trial based on the after-discovered evidence of

Nordo's misconduct and the evidence contained in the H file. To succeed on a

claim of after-discovered evidence, the petitioner must plead and prove that:

> the new evidence: (1) could not have been obtained prior to
> the conclusion of the trial by the exercise of reasonable
> diligence; (2) is not merely corroborative or cumulative; (3)

will not be used solely to impeach the credibility of a witness; and (4) would likely result in a different verdict if a new trial were granted.

*Commonwealth v. Small*, 189 A.3d 961, 972 (Pa. 2018); 42 Pa.C.S.A. § 9543(a)(2)(vi). "The test is conjunctive; the [petitioner] must show by a preponderance of the evidence that *each of these factors has been met* in order for a new trial to be warranted." *Commonwealth v. Padillas*, 997 A.2d 356, 363 (Pa.Super. 2010), *appeal denied*, 14 A.3d 826 (Pa. 2010) (emphasis added). Furthermore, the evidence must be admissible and producible. *Small*, 189 A.3d at 972.

## Nordo's Misconduct

McKant claims that "Nordo acted consistent[ly] in [McKant's] case with [Nordo's] . . . described historical behavior." McKant's Br. at 15. He alleges that Nordo fabricated evidence by testifying regarding an unrelated case, that McKant told him that a man named Robert Nicholas shot McKant. *See id.* at 16 (citing N.T., 8/8/07, at 8, 10). McKant claims at the time of this interaction with Nordo, his jaw was wired shut and he could not talk. Thus, he could not have identified Nicholas. He further alleges that Nordo's misconduct rendered his testimony unreliable and could have been "determinative of [McKant's] guilt or innocence." *Id.* at 28.

The PCRA court concluded that Nordo's misconduct in unrelated cases "did not warrant a new trial." 1925(a) Op., at 12. It further noted that Nordo had minimal involvement in McKant's case and was not alleged to have

- 10 -

committed any misconduct in the instant case. We agree with the reasoning of the PCRA court.

McKant claims that Nordo acted consistently in the instant case with his "described historical behavior." However, there is no evidence that Nordo sexually assaulted, threatened, or coerced any witness in the instant case. Moreover, Nordo did not interview any of the witnesses that identified McKant as the shooter, was not involved in the collection of any evidence, and his involvement was limited to investigating the shooting of McKant that occurred months before the murder. Thus, any evidence of Nordo's misconduct would have merely been used to impeach his credibility and would not have likely resulted in a different outcome of the trial. **Padillas**, 997 A.2d at 363.

### Evidence in H File

McKant maintains that when the H file evidence is viewed collectively, it "could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." McKant's Br. at 56. The pieces of evidence from the H file that McKant claims would have caused a different result at trial include the criminal records for Denmark and Winn, the handwritten note about the victim being threatened by Jerrell Smith, the crime scene report about a recovered gun, and the form completed by Detective Spotwood that a vehicle was not used in the murder.

The PCRA court rejected McKant's claim, concluding that he "failed to establish how these pieces of evidence were favorable or would have

compelled a different result at his trial." 1925(a) Op., at 16. The PCRA court's determination is supported by the record and free of legal error.

First, the note in the file mentioning that the victim had been threatened by Smith would not have likely resulted in a different verdict in the case considering the overwhelming evidence against McKant. Several days after the murder, Smith and Baldwin identified McKant as the shooter when interviewed by police and again when they spoke with prosecutors at the DA's Office. Though Smith and Baldwin recanted their identification of McKant at trial, the jury was able to consider their prior identification to police. Furthermore, McKant had an opportunity at trial to suggest that someone else had a motive to kill the victim but declined to do so because it would have allowed the Commonwealth to introduce his statement to police that gave him a motive to kill the victim. **See** N.T., 8/8/07, at 99-103. Likewise, presenting the jury with Smith's alleged motive to kill would have allowed the Commonwealth to introduce McKant's motive to kill and would not have likely resulted in a different outcome of the trial.

Second, the information in the file related to Winn and Denmark offers McKant no relief. It is purely speculative whether these men had information, favorable or otherwise, that would have resulted in a different outcome of the trial. Similarly, the evidence of the recovery of a gun would not have resulted in a different outcome in McKant's case. The paperwork noted that fingerprint testing on the gun was negative. Additionally, the paperwork did not suggest that the gun was in any way connected to the murder. Moreover, the

paperwork for the firearm noted that it was a .380 caliber firearm, in contrast to the .38 or .357 bullets that were recovered from the victim's body. ***See*** H File – at Bates 513; N.T., 8/7/07, at 127.

Finally, concerning the paperwork by Detective Spotwood that indicated that a vehicle was not used by the "offender" in "this incident," McKant claims that he would have used it to "impeach[] the evidence that [McKant] used that car." McKant's Br. at 54. However, impeachment is an insufficient basis on which to seek PCRA relief for new evidence. Moreover, even assuming the evidence would not be used purely for impeachment, it would have been unlikely to have resulted in a different trial outcome. We affirm the order of the PCRA court.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 4/2/2024