J-S13039-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| HARRY GREEN | : | |
| | : | |
| Appellant | : | No. 1287 WDA 2023 |

Appeal from the PCRA Order Entered September 27, 2023
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0013983-2010

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| HARRY GREEN | : | |
| | : | |
| Appellant | : | No. 1288 WDA 2023 |

Appeal from the PCRA Order Entered September 27, 2023
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0001065-2011

BEFORE:   KUNSELMAN, J., BECK, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY KUNSELMAN, J.:               **FILED: JUNE 12, 2024**

Harry Green appeals from the order denying his serial petition filed pursuant to the Post Conviction Relief Act (PCRA).  42 Pa.C.S.A. §§ 9541–9546.  Green claims a new trial is warranted based on after-discovered evidence from a witness, William Moore.  We affirm.

_____

[*] Former Justice specially assigned to the Superior Court.

Following a bench trial, Green was convicted of third-degree murder and a firearm violation at the above dockets. The trial court provided the following pertinent facts and summarized the trial testimony as follows:

On the afternoon of August 9, 2010, [the victim] was shot by her boyfriend, [Green], in her apartment on Deraud Street in the Hill District section of Pittsburgh. [The victim] died of a gunshot wound to the head, with a single bullet having entered her head below her right eye. The bullet was recovered inside [the victim's] skull. Mr. Terrence Lee, a friend of the victim and acquaintance of [Green], was at the apartment at the time of the shooting and identified [Green] as the shooter.

According to the testimony at trial, in the time leading up to the shooting, [Green] and [the victim] had been arguing. [The victim] had expressed, to a friend and family members, her intentions to break off her relationship with [Green]. She was discussing with her friends and family her plans to move from the Hill District to the East Hills. The move was going to be financed by an old boyfriend. Several hours prior to the shooting, [Green] overheard one such heated discussion between [the victim] and her sister, Khalia. Within minutes of overhearing that conversation, [Green] and [the victim] had an argument, during which [Green] took [the victim's] cell phone. As [Green] left [the victim's] apartment, [the victim's] sister, Khalia, was able to see a gun on the right side of [Green's] hip. After visiting a friend following her argument with [Green], [the victim] returned to her apartment to wait for [Green] to return her cell phone.

The fact that [Green] had taken [the victim's] cell phone was confirmed by several witnesses. The victim's sister saw the cell phone in [Green's] hand. The victim's mother, Barbara Robinson, testified that she was at the victim's apartment several times in the late morning/early afternoon to pick up her daughter, but stated that [the victim] would not go with her until [Green] returned her phone. Additionally, the victim indicated to her friend, Janai Curry, that [Green] had her cell phone and she was waiting for him to return it to her.

According to the recorded statement that Mr. Lee gave to the police on the night of the shooting, [Green] was at [the victim's] apartment, [and] engaged in an argument with her, upon

- 2 -

Mr. Lee's arrival at the apartment, which was approximately fifteen (15) minutes prior to the shooting. Mr. Lee told the police that, after some period of argument, [Green] got up to leave the apartment. As he was walking out the door, the victim said something to [Green], at which point [Green] turned toward her, pulled his gun, and shot her in the face. [The victim] immediately fell to the floor. Mr. Lee initially grabbed [the victim], then ran outside, looking upstairs of [the victim's] apartment and yelled to the upstairs neighbor, Floorine Turner, to call an ambulance.

Ms. Turner's daughter-in-law, who was also in the upstairs apartment, called the police, and Ms. Turner proceeded downstairs, first to [the victim's] sister's apartment and then to the victim's apartment. As she was descending the stairs, she saw [Green] going in and out of the front door. [Green] was saying that he was sorry and to [take] care of "my baby." Ms. Turner also overheard Mr. Lee telling [Green] that he needed to get out of there. Ms. Turner positively identified [Green], as the victim's boyfriend and as the person going in and out of the apartment door.

Ms. Janai Curry, who had spent time with [the victim] that afternoon in the hours before the shooting and whom [the victim] had told that she wanted to leave [Green], also saw [Green] after the shooting. As she was walking down the street, returning to her home, she received a frantic telephone call from Mr. Lee using the victim's phone. The fact that [the victim's] cell phone was back at her apartment confirms [Green's] presence at the scene. The telephone call informed her of the shooting that had just occurred. Ms. Curry then immediately saw [Green] leaving the area of the victim's apartment and walking down the nearby city steps. Ms. Curry testified credibly that [Green] was wearing a white shirt with blood on the front of it.

Both Mr. Lee and Ms. Turner positively identified [Green] via photo array when questioned by police. Mr. Lee also relayed what he had witnessed to the victim's mother and described the events leading up to the shooting to her. Ms. Turner, an unbiased witness with no real connection to anyone involved in the incident, was the most credible and convincing witness at trial.

Trial Court Opinion, 12/21/12, at 2-5 (footnotes and citations to record omitted).

After finding Green guilty of the third-degree murder and the firearm charge, on December 16, 2011, the trial court sentenced him to an aggregate term of 21½ to 43 years of imprisonment. Green filed a timely post-sentence motion, which the trial court denied. Green appealed at each docket. On September 4, 2013, this Court affirmed his judgment of sentence, and our Supreme Court denied his petition for allowance of appeal on March 11, 2014. **Commonwealth v. Green**, 76 A.3d 575 (Pa. Super. 2013), *appeal denied*, 87 A.3d 318 (Pa. 2014). Green did not seek further review.

On December 18, 2014, Green filed a timely PCRA petition, and the PCRA court appointed counsel. Thereafter, PCRA counsel filed a petition to withdraw and a "no-merit" letter pursuant to **Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1988), and **Commonwealth v. Finley**, 550 A.2d 213 (Pa. Super. 1988) (*en banc*). The PCRA court granted counsel's petition to withdraw and issued a Pa.R.Crim.P. 907 notice of its intent to dismiss Green's petition without a hearing. By order entered June 18, 2015, the PCRA court dismissed Green's petition.

On June 3, 2019, Green filed another *pro se* PCRA petition, and the PCRA court appointed counsel. Thereafter, PCRA counsel filed a petition to withdraw and a **Turner**/**Finley** letter concluding that Green's claims were time barred under the PCRA. On June 11, 2020, the PCRA court granted PCRA counsel's petition to withdraw and notified Green of its intent to dismiss the petition without a hearing pursuant to Rule 907. Green filed a timely response in which he asked to amend the PCRA petition. The PCRA granted Green's

- 4 -

motion, and Green filed a *pro se* amended PCRA petition on August 31, 2020. By order entered October 29, 2020, the PCRA court dismissed Green's amended petition because it was untimely filed, and Green failed to satisfy an exception to the PCRA's time bar. Green appealed.

Green asserted that his petition was timely because it was filed within one year of the date he received the affidavit in which Mr. Lee averred that Robert Murphy killed the victim. After review, this Court agreed with the PCRA court that Green's second petition was untimely, and that Green failed to demonstrate that he could not have ascertained the facts earlier by the exercise of due diligence. *See Commonwealth v. Green*, 264 A.3d 379 (Pa. Super. 2021) (non-precedential decision). We therefore affirmed the PCRA court's order denying Green post-conviction relief.

On April 6, 2022, Green filed the PCRA petition at issue, his third. In this petition, Green again asserted that he had newly discovered evidence, this time in the form of an affidavit from William Moore, an alleged eyewitness to the shooting. According to this affidavit, Moore was present for the victim's murder and the shooter was not Green, but rather, Robert Murphy. The PCRA court appointed current counsel, who filed an amended petition on October 17, 2022. The Commonwealth filed an answer, in which it noted that Green's third petition was time-barred because the petition did not indicate when Green became aware of the information alleged by Moore. Thereafter, the PCRA court granted leave to supplement the petition with verified statements from both Moore and Green.

The PCRA court held an evidentiary hearing on May 24, 2023. Both Green and Moore testified. By order entered on September 27, 2023, the PCRA court denied Green's third petition. These appeals followed, which we later consolidated. Both Green and the PCRA court have complied with Pa.R.A.P. 1925.

Green raises one question for our review:

I.      Did the [PCRA] court abuse its discretion in denying [Green's] PCRA Petition on the grounds that he failed to meet all of the requirements necessary to establish a successful [after-discovered evidence] claim pursuant to 42 Pa.C.S. §9543(a)(2)(vi)?

Green's Brief at 4.

This Court's standard of review regarding an order denying a petition under the PCRA is to ascertain whether "the determination of the PCRA court is supported by the evidence of record and is free of legal error. The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record." *Commonwealth v. Barndt*, 74 A.3d 185, 191-92 (Pa. Super. 2013) (citations omitted).

Initially, the PCRA court concluded that Green established the newly discovered fact exception to the PCRA's time bar. Therefore, it conducted an evidentiary hearing. The PCRA court reviewed the testimony from that hearing, and compared it to the trial testimony. Ultimately, the PCRA court concluded that Green's substantive claim of after-discovered evidence did not entitle him to relief in the form of a new trial.

To review the PCRA court's determination, we first note the test applied to after-discovered evidence under the PCRA. When discussing the test in the context of a PCRA appeal, our Supreme Court summarized:

[W]e have viewed this analysis in criminal cases as comprising four distinct requirements, each of which, if unproven by the petitioner, is fatal to the request for a new trial. As stated, the four-part test requires the petitioner to demonstrate the new evidence: (1) could not have been obtained prior to the conclusion of trial by the exercise of reasonable diligence; (2) is not merely corroborative or cumulative; (3) will not be used solely to impeach the credibility of a witness; and (4) would likely result in a different verdict if a new trial were granted. The test applies with full force to claims arising under Section 9543(a)(2)(vi) of the PCRA. In addition, we have held the proposed new evidence must be producible and admissible.

*Commonwealth v. Small*, 189 A.3d 961, 972 (Pa. 2018) (citations omitted).

Credibility determinations are an integral part of determining whether a PCRA petitioner has presented after-discovered evidence that would entitle him to a new trial. *See*, *e.g.*, *Small*, 189 A.3d at 978-79 (remanding for the PCRA court to make relevant credibility determinations). We have stated, prior to granting a new trial based on after-discovered evidence, "a court must assess whether the alleged after-discovered evidence is of such a nature and character that it would likely compel a different verdict if a new trial is granted." *Commonwealth v. Padillas*, 997 A.2d 356, 365 (Pa. Super. 2010). "In making this determination, a court should consider the integrity of the alleged after-discovered evidence, the motive of those offering the

evidence, and the overall strength of the evidence supporting the conviction."

***Id.***

Applying the ***Small*** test to Green's claim, the PCRA court[1] found that

Green could not establish the fourth prong, *i.e.*, that the newly discovered

evidence would likely result in a different verdict if a new trial were granted.

The PCRA court detailed its reasoning as follows:

> [T]he court finds that it is unlikely that Mr. Moore's testimony would compel a different verdict at trial when considered against the evidence as a whole. Multiple witnesses, including Terrence Lee, Floorine Turner, Kahlia Trowery, and Barbara Robinson, all provided clear and unequivocal eyewitness testimony that identified [Green] as the shooter. This court's original Trial Court Opinion . . . provide[s] a more complete discussion of the substantial evidence introduced against [Green] at his trial.
>
> Additionally, for Mr. Moore's testimony to have the potential to compel a different result, it must be believed. This court finds that Mr. Moore is an unreliable and contradictory witness. This court did not consider Mr. Moore's testimony to be credible given the flagrant inconsistencies with the evidence presented at trial, as well as inconsistencies contained within the testimony itself. Mr. Moore testified to his presence in the victim's apartment, which was not corroborated by a single other witness at the crime scene, and he claimed that another man, Shawn Moorehead, was also present in the apartment at the time of the shooting, a man never previously or subsequently mentioned in this case by anyone, including Mr. Moore in his affidavit.
>
> Mr. Moore next claimed in his testimony that he fled the scene immediately, but none of the witnesses present at the scene noted either his presence or his flight. He claimed in his testimony that he was present with Mr. Lee, but Mr. Lee has consistently identified the shooter as [Green] in every document, testimony, and interview since the initial police report. The only exceptions

---

[1] The PCRA court also presided over Green's trial.

- 8 -

to [Mr. Lee's] positive identifications of [Green] as the shooter were at trial where he indicated that he didn't see the shooter and in the letter that he purportedly wrote to [Green] eight (8) years after the murder claiming that the shooter was Robert Murphy.

PCRA Court Opinion, 9/27/23, at 10-11 (citations to record omitted).

The PCRA court not only found Moore's testimony regarding the shooting incredible, given the evidence introduced at his trial, but the court also pointed to contradictions in Moore's testimony regarding the preparation of his 2022 affidavit:

> The most egregious contradictions lie within Mr. Moore's testimony. First, Mr. Moore testified that, after he was made aware of [Green's] crime in January of 2022, he "sat on it for like a few days" and then had an inmate legal advisor prepare the affidavit for him. Mr. Moore testified that he carried around the affidavit in a "sealed envelope" for almost a week before finally seeing [Green] again and providing it to him on April 6, 2022. However, the affidavit is dated for the same day it purportedly came into [Green's] possession, and [Green's] *pro se* PCRA petition is dated April 6, 2022 as well.

> Additionally, the timeline of first meeting [Green] in December or January, mulling about the issue for a few days before preparing the affidavit and then carrying it around for a week or four or five days before handing it to [Green] on April 6, 2022 makes absolutely no sense. Even if the benefit of the doubt is given that the initial meeting between the two men took place at the very end of January 2022, there is still over a two[-]month period before the letter is finally handed over to [Green], which calls into question the entire timeline of events and the overall veracity of described events.

> [Green] also testified that this envelope was handed to him in the pill line, but then Mr. Moore testified to three different locations of the handoff, first testifying that he gave it to [Green] in the pill line, then the chow line, then right when [Green] was coming from the yard at halftime. Finally, the affidavit itself was not given under oath under penalty of perjury, and Mr. Moore also

has a *crimen falsi* conviction for robbery in 2014, which casts further doubt over his credibility.

PCRA Court Opinion, 9/27/23, at 11-12 (citations to record omitted). The court then concluded that, "[t]aking all of this into consideration, the overwhelming evidence that indicates that [Green] is the shooter responsible for the death of [the victim] is not shaken or assailed by Mr. Moore's testimony." *Id.* at 12.

Our review of the record, including Moore's testimony at the PCRA hearing, as well as the trial evidence the court previously credited, *see supra*, supports the PCRA court's conclusion that his testimony would not likely result in a different verdict. Given the above-cited comments, the PCRA court properly considered the credibility and integrity of Green's after-discovered evidence claim and concluded that Green was not entitled to a new trial.

Green's claims to the contrary are unavailing. In arguing that the PCRA court erred, Green presents a detailed account of his hearing testimony, but makes no comparison to the contrary testimony presented by multiple witnesses at his trial,[2] and presents no challenge to the PCRA court's credibility determinations. As explained above, the PCRA court found Moore's testimony unworthy of belief. This Court "must defer to the credibility determinations

---

[2] Green does note that Moore's "description of events was consistent with [Lee's] testimony under oath at trial," and speculates why Lee's trial testimony differed at times from Moore's hearing testimony. *See* Green's Brief at 26-27. However, the trial court, as fact-finder, did not believe Lee's testimony at trial, but rather his earlier statements to police. *See supra*.

made by the [PCRA] court that observed a witness's demeanor first hand." ***Commonwealth v Todd***, 820 A.2d 707, 712 (Pa. Super. 2003). ***See also Commonwealth v. Battle***, 883 A.2d 641, 648 (Pa. Super. 2005) (explaining that credibility determinations are solely within the province of the PCRA court).

In sum, the PCRA court correctly considered the integrity and credibility of Green's after-discovered evidence, compared to the "overall strength of the evidence supporting the conviction," and determined it did not warrant relief in the form of a new trial. ***Padillas***, ***supra***. Thus, we affirm the court's order denying Green post-conviction relief.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 6/12/2024