J-S08003-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| EARL L. HARRIS | : | |
| | : | |
| Appellant | : | No. 286 EDA 2024 |

Appeal from the PCRA Order Entered December 15, 2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0532841-1992

BEFORE: DUBOW, J., KUNSELMAN, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY KUNSELMAN, J.: **FILED MAY 15, 2025**

Earl L. Harris appeals from the order denying his serial petition filed pursuant to the Post Conviction Relief Act ("PCRA"). 42 Pa.C.S.A §§ 9541-46. We affirm.

The pertinent facts and procedural history may be summarized as follows. Harris, along with two co-conspirators participated in the fatal shooting of Jermain Wright, one of three intended robbery victims. This Court previously cited the trial court's recitation of the pertinent facts as follows:

> The day before the fatal shooting, [Harris], Keith Tyler, and three others known only as Aaron, Ronnie, and Scrooge had planned to commit a series of robberies in the vicinity of 30th and Cumberland Streets, but they had failed to immediately find any victims. This scheme carried over to the following evening when the group attempted to rob a man known as Dirty Dave. Dirty Dave informed them that he did not have anything on him but that there could be some prospective victims, who were selling drugs, on Stanley Street. Subsequently, the crew piled into Scrooge's car and dropped [Harris] off at 31st and York Streets.

[Harris] then rode his bicycle onto the 2400 block of Stanley Street to inspect the scene.

Meanwhile, at about 1:00 o'clock A.M. on June 27, 1991, James Anderson, Eric Vereen, and Jermain Wright, the deceased, were congregated on the steps in front of 2463 Stanley Street consuming cocaine and alcoholic beverages when they noticed [Harris] ride by on his bicycle. [Harris] continued up the street until he stopped to talk to Dirty Dave on the 2500 block. Following a brief conversation, [Harris] returned the way he came, once again passing the imbibing trio seated on the steps. After [Harris] rode by, Anderson warned his cohorts that "something looks like its going to happen." Approximately two minutes later, [Harris], Aaron, and Ronnie turned the corner of Cumberland and Stanley Streets, each with a gun drawn, and told the seated trio to "get the money up, get the stash out." As they approached, the deceased attempted to escape into the confines of 2463, but he was told to sit back down. Each assailant then positioned himself in front of one of the victims with [Harris] before Anderson. Anderson repeatedly asserted that he did not have any money and patted himself down to demonstrate that fact. [Harris] presumably irritated by his protests, then struck Anderson on the left side of his forehead with his already cocked .38 caliber revolver. The other two victims were also pistol-whipped by the assailants. As a result of the blow, Anderson received six stitches to mend his lacerated forehead during a brief hospital visit. After he was struck, Anderson reflexively stuck his right arm into the air and knocked the gun out of [Harris'] hand. [Harris] then retrieved his gun, pointed it up in the air, and twice pulled the trigger, but he found that it was not operable.

All three victims were subsequently searched but only the deceased had anything of value. The assailant physically removed [$250.00] and ten vials of crack cocaine in a plastic bag from his person. Following the search, [Harris] grabbed Anderson by the scruff of his collar and told him to take off. Shortly thereafter, Vereen was released and quickly followed Anderson up the street. The remaining victim, the deceased, was also told to flee the scene. However, as he was about to leave, Aaron grabbed him by the collar of his jacket, planted his gun into the middle of his back, and shot him. [Later that morning, the victim was pronounced dead.]

*Commonwealth v. Harris*, 669 A.2d 409 (Pa. Super. 1995) (non-precedential decision at 2-3) (citations omitted).

Relevant to this appeal, two days after the shooting, the victim's cousin, Lester Wright, gave a written statement to then Philadelphia County Detectives David Baker and William Gross. In his statement, Wright told the detectives that, although he did not witness the fatal shooting, he saw Harris fleeing near the scene shortly after the incident.

Following a bench trial on September 25, 1992, the trial court convicted Harris of second-degree murder and related charges. Harris filed post-verdict motions, which the trial court denied. On March 29, 1994, the trial court sentenced Harris to life in prison for his murder conviction. Harris appealed. On September 26, 1995, this Court affirmed his judgment of sentence. *Commonwealth v. Harris*, *supra*. Harris did not seek discretionary review with the Pennsylvania Supreme Court.

On January 3, 1997, Harris filed his first *pro se* PCRA petition and the PCRA court appointed counsel. Ultimately, PCRA counsel filed a *Turner*/*Finley* no-merit letter[1] and requested leave to withdraw. Following an independent review of the record, the PCRA court denied Harris' petition and granted counsel's petition to withdraw. Harris appealed. On June 1,

---

[1] *See Commonwealth v. Turner*, 544 A.2d 927 (Pa. 1988), and *Commonwealth v. Finley*, 550 A.2d 213 (Pa. Super. 1988) (*en banc*).

1999, this Court affirmed the order denying post-conviction relief, and, on December 2, 1999, our Supreme Court denied Harris' petition for allowance of appeal. **Commonwealth v. Harris**, 742 A.2d 204 (Pa. Super. 1999) (non-precedential decision), *appeal denied*, 749 A.2d 467 (Pa. 1999).

Over the next two decades, Harris filed several more PCRA petitions that were either denied as untimely or meritless. On March 26, 2019, Harris filed the PCRA petition at issue, his sixth. Subsequently, Harris filed several *pro se* amendments to the petition. On July 1, 2021, private counsel entered her appearance. Counsel filed an amended petition on October 17, 2022, and the Commonwealth filed a response. The PCRA court held an evidentiary hearing regarding the timeliness of Harris' sixth petition on December 15, 2023. By order entered that same day, the PCRA court dismissed Harris' 2019 PCRA petition. Harris filed a timely *pro se* appeal, and present counsel was appointed to represent him. Both Harris and the PCRA court have complied with Appellate Rule 1925.

Harris raises the following issue on appeal:

1. Did the PCRA court err and was dismissal of [Harris'] PCRA petition not supported by the record and free from legal error because the Commonwealth failed to disclose a statement made by Lester Wright and the habitual misconduct of Detective David Baker means that a new trial is warranted?

Harris' Brief at 4 (excess capitalization omitted).

This Court's standard of review regarding an order dismissing a petition under the PCRA is to ascertain whether "the determination of the PCRA court

is supported by the evidence of record and is free of legal error. The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record." ***Commonwealth v. Barndt***, 74 A.3d 185, 191-92 (Pa. Super. 2013) (citations omitted).

We first consider whether Harris' sixth PCRA petition was untimely filed. The timeliness of a post-conviction petition is jurisdictional. ***Commonwealth v. Hernandez***, 79 A.3d 649, 651 (Pa. Super. 2013). Generally, a petition for relief under the PCRA, including a second or subsequent petition, must be filed within one year of the date the judgment becomes final, unless the petitioner alleges and proves that an exception to the time for filing the petition is met. The three narrow statutory exceptions to the one-year time bar are as follows: "(1) interference by government officials in the presentation of the claim; (2) newly discovered facts; and (3) an after-recognized constitutional right." ***Commonwealth v. Brandon***, 51 A.3d 231-233-34 (Pa. Super. 2012) (citing 42 Pa.C.S.A. § 9545(b)(1)(i-iii)). A PCRA petition invoking one of these statutory exceptions must be filed within one year of the date the claim could have been presented." 42 Pa.C.S.A. § 9545(b)(2).

Here, Harris' judgment of sentence became final on October 26, 1995, thirty days after this Court affirmed his judgment of sentence and the time for filing a petition for allowance of appeal to our Supreme Court expired. ***See*** 42 Pa.C.S.A. § 9545(b)(3). Therefore, Harris had until October 25, 1996, to file a timely petition. Because Harris filed his sixth petition in 2019, it is

patently untimely unless he has satisfied his burden of pleading and proving that one of the enumerated exceptions applies.  **See Hernandez**, **supra**.

Harris has failed to plead and prove any time-bar exception.  In his amended petition, Harris claimed that he could establish the PCRA court's jurisdiction pursuant to the newly discovered evidence exception and governmental interference exception to the PCRA's time bar.  Harris first argues he met the governmental interference exception to the PCRA's time bar because the Commonwealth committed a violation of **Brady v. Maryland**, 373 U.S. 83 (1963).  According to Harris, Lester Wright provided a statement to the police on the day of the shooting incident that exculpated him and this statement was not disclosed by the Commonwealth.  In addition, Harris asserted that he did not learn of this statement until 2019, after receiving an affidavit from Wright.  Thus, Harris contends that Wright's affidavit also constitutes newly-discovered evidence.

Before addressing these claims, we discuss the law regarding these exceptions.  Notably, to invoke either of these exceptions, a petitioner must act with due diligence.

Although a **Brady** violation might fall within the governmental interference exception to the PCRA's time bar, the PCRA statute nevertheless requires a petitioner to plead and prove:  (1) the failure to previously raise the claim was the result of interference by government officials, and (2) the information on which he relies could not have been obtained earlier with the

exercise of due diligence. ***Commonwealth v. Vinson***, 249 A.3d 1197. 1205 (Pa. Super. 2021). As our Supreme Court has explained"

> To demonstrate a ***Brady*** violation, [a defendant] must show that: (1) the prosecution concealed evidence; (2) which was either exculpatory evidence or impeachment evidence favorable to him; and (3) he was prejudiced by the concealment. To show prejudice, he must demonstrate a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability for these purposes is one which undermines confidence in the outcome of the trial.

> Furthermore, . . . ***Brady*** evidence may not be cumulative of other evidence, cannot have been equally available to the defense, and cannot have been discoverable through the exercise of due diligence.

***Commonwealth v. Simpson***, 66 A.3d 253, 264 (Pa. 2013) (internal quotation marks and citations omitted).

This Court has explained the newly-discovered-fact exception to the PCRA's time bar as follows:

> The timeliness exception set forth in Section 9545(b)(1)(ii) requires a petitioner to demonstrate he did not know the facts upon which he based his petition and could not have learned of those facts earlier by the exercise of due diligence. Due diligence demands that the petitioner take reasonable steps to protect his own interests. A petitioner must explain why he could not have learned the new fact(s) earlier with the exercise of due diligence. This rule is strictly enforced. Additionally, the focus of this exception is on the newly discovered facts, not on a newly discovered or newly willing source for previously known facts.

> The timeliness exception set forth at Section 9545(b)(1)(ii) has often mistakenly been referred to as the "after-discovered evidence" exception. This shorthand reference was a misnomer, since the plain language of

- 7 -

subsection (b)(1)(ii) does not require the petitioner to allege and prove a claim of "after-discovered evidence." Rather, as an initial jurisdictional threshold, Section 9545(b)(1)(ii) requires a petitioner to allege and prove that there were facts unknown to him and that he exercised due diligence in discovering those facts. Once jurisdiction is established, a PCRA petitioner can present a substantive after-discovered evidence claim.

***Commonwealth v. Brown***, 111 A.3d 171, 176 (Pa. Super. 2015) (citations omitted).

As noted above, the PCRA court held an evidentiary hearing regarding whether Harris exercised due diligence in discovering Wright's purported statement and affidavit. At the hearing, Wright testified regarding the initial statement that he allegedly gave to the Commonwealth on the day of the incident, the written statement transcribed by the detectives, as well as a subsequent statement he gave to private counsel's investigator. Wright was cross-examined by the Commonwealth and the court itself asked Wright directly about the many inconsistencies in the three statements.

Toward the close of the hearing, the PCRA court stated "I'm gonna find that your petition is timely because you just found out about it." N.T., 12/15/23, at 125. However, the court further informed Harris that it "did not find that the testimony provided was credible and sufficient to grant you a new trial." ***Id.*** at 131.

Curiously in its Rule 1925(a) opinion, however, the PCRA court stated that Lester Wright's affidavit "meets neither the new fact nor the government interference exception to the PCRA's time bar because [Harris] does not meet

the due diligence standard." PCRA Court Opinion, 5/10/24, at 4-5. Because the court initially found due diligence at the hearing, we will exercise our jurisdiction and review the merits of his claims.

To review the PCRA court's determination, we first note the test applied to after-discovered evidence under the PCRA. When discussing the test in the context of a PCRA appeal, our Supreme Court summarized:

> [W]e have viewed this analysis in criminal cases as comprising four distinct requirements, each of which, if unproven by the petitioner, is fatal to the request for a new trial. As stated, the four-part test requires the petitioner to demonstrate the new evidence: (1) could not have been obtained prior to the conclusion of trial by the exercise of reasonable diligence; (2) is not merely corroborative or cumulative; (3) will not be used solely to impeach the credibility of a witness; and (4) would likely result in a different verdict if a new trial were granted. The test applies with full force to claims arising under Section 9543(a)(2)(vi) of the PCRA. In addition, we have held the proposed new evidence must be producible and admissible.

*Commonwealth v. Small*, 189 A.3d 961, 972 (Pa. 2018) (citations omitted).

Credibility determinations are an integral part of determining whether a PCRA petitioner has presented after-discovered evidence that would entitle him to a new trial. *See*, *e.g.*, *Small*, 189 A.3d at 978-79 (remanding for the PCRA court to make relevant credibility determinations). We have stated, prior to granting a new trial based on after-discovered evidence, "a court must assess whether the alleged after-discovered evidence is of such a nature and character that it would likely compel a different verdict if a new trial is granted." *Commonwealth v. Padillas*, 997 A.2d 356, 365 (Pa. Super.

2010). "In making this determination, a court should consider the integrity of the alleged after-discovered evidence, the motive of those offering the evidence, and the overall strength of the evidence supporting the conviction." *Id.*

Here, the PCRA court found Wright's testimony was not credible. *Small*, *supra*. We cannot disturb this determination. *See Commonwealth v. Harmon*, 738 A.2d 1023, 1025 (Pa. Super. 1999) (explaining that when a PCRA court's determination of credibility is supported by the record, it cannot be disturbed on appeal). Moreover, given the PCRA court's disbelief that Wright gave an initial statement to police that was exculpatory, Harris has failed to establish a *Brady* violation.

Next, as part of his issue raised on appeal, Harris further asserts that the "habitual misconduct of Detective David Baker" constituted newly-discovered evidence that rendered his sixth PCRA petition timely. Harris' Brief at 9. In his petition, Harris noted that Wright claimed that he was coerced into giving his written statement that inculpated Harris, and the Commonwealth's concession that Detective David Baker committed similar misconduct in an unrelated case warrants a new trial in his case.

At the evidentiary hearing, Harris proffered no evidence to support this claim, and therefore he is not entitled to relief. *See Commonwealth v. Mickeals*, 2025 PA Super 89 (filed April 16, 2025) (non-precedential decision at 9) (agreeing that Mickeals failed to meet his burden to establish timeliness

by not presenting and evidence at the evidentiary hearing; "[i]t is axiomatic that a party fails to meet their burden if they do not present any evidence").

Nonetheless, in its Rule 1925(a) opinion, the PCRA court concluded that, even if Harris could establish due diligence regarding this claim, "it could be determined from the face of [Harris'] petition that he is not entitled substantive relief." PCRA Court Opinion, 5/10/24, at 6. The court explained:

> The record establishes that the concession of Detective Baker's misconduct in an unrelated case would not likely result in a different verdict if a new trial were granted in this case. Although Detective Baker participated in the investigation of [Harris], the evidence that inculpated [Harris] and overwhelmingly established his guilt was developed independently of any involvement by Detective Baker. Detective Baker did not testify at trial. Detective Baker's total participation in the case was limited to interviewing James Anderson, Lester Wright, and Kimberly Outlaw. Neither Lester Wright nor Outlaw testified at trial. At trial, James Anderson testified in accordance with his original statement to Detective Baker and did not allege any misconduct by Detective Baker.
>
> Additionally, the concession by the Commonwealth was specifically to Detective Baker's misconduct in the [unrelated] case[.] There has been no concession or finding that Detective Baker acted inappropriately in this case.
>
> [Harris'] guilt was established through the testimony of James Anderson, Eric Vereen, [Harris'] own statement, and his flight from authorities. Accordingly, [Harris] cannot demonstrate that a different verdict would likely result if Detective Baker's unrelated misconduct record was admitted into evidence at a new trial.

PCRA Court Opinion, 5/10/24, at 7. Our review of the record supports the PCRA conclusions.[2]

In sum, we conclude that the record supports the PCRA court's conclusions that neither Wright's affidavit nor Detective Baker's misconduct in an unrelated case would compel a different result here. *Padillas*, *supra*. Thus, Harris did not meet the four-part test required for a new trial as to either claim. *Small*, *supra*. We therefore affirm the PCRA court's order denying Harris post-conviction relief.

Order affirmed.


Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary


Date: 5/15/2025

---

[2] In his first PCRA petition, Harris unsuccessfully challenged trial counsel's ineffectiveness for failing to seek suppression of his confession. *See Commonwealth v. Harris*, 742 A.2d 204 (Pa. Super. 1999) (non-precedential decision at 3-4).